BELFORD *v.* SCRIBNER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 226. Submitted March 24, 1892. — Decided April 11, 1892.

In an equity suit for the infringement of a copyright, where the defendant appeals from the final decree, if exceptions were taken to the report of a master in favor of the plaintiff, it is the duty of the appellant to bring the exceptions into this court, as part of the record; and, if he took no exceptions, the report stands without exception.

Where the authoress of a book was a married woman, the copyright of which was taken by her assignee as proprietor, it was held, that, inasmuch as she settled, from time to time, with the proprietor, for her royalties, the court would presume that her legal title as author was duly vested in such proprietor, and that long acquiescence, by all parties, in such claim of proprietorship, was enough to answer the suggestion of the husband's possible marital interest in the wife's earnings.

If the husband was entitled to any part of the wife's earnings, that was a matter to be settled between the husband and the proprietor, and could not be interposed as a defence to a trespass on the rights of the proprietor of the copyright.

The proof showed that the title to the book was vested in the plaintiff, and that the copyright was secured by him in accordance with law.

Under § 4956 of the Revised Statutes, it is sufficient if the two printed

copies of the book are deposited with the Librarian of Congress the day before its publication.

A certificate of the Librarian of Congress as to the day of the receipt by him of the two copies is competent evidence, though not under seal.

The finding by the Circuit Court that a certified copy of copyright had been theretofore filed as proof and lost, is sufficient evidence of that fact to sustain an order granting leave to file a new certified copy in its place, there being nothing in the record to control such finding.

As two of the defendants printed the infringing books by contract with the third defendant, who published and sold them, and as, under § 4964 of the Revised Statutes, both the printer and the publisher are equally liable to the owner of the copyright for an infringement, and as the sum decreed was found to be the profit shown to have been made by the defendants from the defendants' infringement, the two defendants who did the printing were held to be sharers in the profits so realized from the sales, and to be properly chargeable with such profits.

The matter and language in the infringing books being the same as the plaintiff's in every substantial sense, but so distributed through such books as to make it almost impossible to separate the one from the other, the entire profits realized by the defendants must be given to the plaintiff.

THE court stated the case as follows:

This is a suit in equity, brought on the 18th of January, 1884, in the Circuit Court of the United States for the Northern District of Illinois, by Charles Scribner, a citizen of New York, against Belford, Clarke & Co., an Illinois corporation, and Michael A. Donohue and William P. Henneberry, citizens of Illinois.

The bill alleges that the plaintiff is a publisher and bookseller, doing business under the name of Charles Scribner's Sons, in the city of New York; that from a time previous to April 1, 1871, and ever since then, one M. Virginia Terhune, the wife of Edward P. Terhune, a citizen of Massachusetts, has been and now is an authoress, who has written and published various works under the name of " Marion Harland;" that about April 1, 1871, she, being then and ever since a citizen of the United States, became the authoress and compiler of a work or manuscript entitled " Common Sense in the Household; A Manual of Practical Housewifery, by Marion Harland;" that said work was made up and composed of

receipts for cooking foods and fruits, preserving meats, vegetables, and fruits, and preparing drinks, and many other receipts for the sick-room and nursery, and contained much other instructive and valuable matter and information for household and family purposes; that all such receipts, information, instruction and material were selected and arranged with great care and labor, and embodied and written in the style, words and language of said lady, and she was the original inventor and author of most of the written matter contained in said work, and with great labor and care had selected and compiled the remainder thereof, and was the original compiler and author of all of said work and of the arrangement of the topics and index thereof; that prior to the publication of said work, and on or about April 1, 1871, Charles Scribner, since deceased, and three other persons, named Armstrong, Seymour and Peabody, all being citizens of the United States, and publishers and booksellers residing and doing business in the city of New York, under the firm name of Charles Scribner & Co., by an agreement with the said lady, undertook and became interested in, and assumed the risk and responsibility of, the publication of said work; that such agreement was duly entered into in the city of New York, and was to be performed in the State of New York by the parties thereto, and by the laws of that State the said lady, being a married woman, was authorized and empowered to enter into and execute the said contract in the same manner and to the same extent as if she had been a *feme sole;* that thereafter and prior to the publication of the work, and in or about May, 1871, the said copartners, under the firm name of Charles Scribner & Co., secured, according to the laws of the United States, a copyright of said work, as proprietors thereof; that thereafter, said firm printed, published and sold the work under the aforesaid name, at reasonable prices, until the death of said Charles Scribner and the formation of the firm of Scribner, Armstrong & Co., and the transfer of all their interests in the said copyright and agreement with said lady to the latter firm; that on or about February 10, 1872, John Blair Scribner, a son of Charles Scribner, deceased, and the said Armstrong

and Seymour, all being citizens of the United States and residing in New York, and publishers and booksellers doing business in the city of New York under the firm name of Scribner, Armstrong & Co., succeeded to the business and became the owners of the property, good-will and trade of the firm of Charles Scribner & Co., including the said copyright and the agreement between said firm and the said lady, and by virtue thereof became interested in and assumed the risk and responsibility of the publication and sale of said work, and continued to supply the public with copies of the same at reasonable prices, until the dissolution of the firm, in 1878, and the formation of the firm of Charles Scribner's Sons, and the transfer to the latter firm of all interest in said copyright and agreement; that on or about June 11, 1878, John Blair Scribner and the plaintiff, sons of said Charles Scribner, deceased, citizens of the United States, and publishers and booksellers, doing business in the city of New York, under the firm name of Charles Scribner's Sons, succeeded to and became the owners of the property, business, good-will and trade of the firm of Scribner, Armstrong & Co., including the said copyright and the agreement with said lady, and by virtue thereof became interested in and assumed the risk and responsibility of the publication and sale of the said work, and continued to supply the public with copies of the same at reasonable prices, until the death of John Blair Scribner, in 1879, and the transfer to the plaintiff of all the property, business, good-will and trade of the firm, including said copyright and agreement; that on the death of John Blair Scribner, in 1879, the plaintiff, under the firm name of Charles Scribner's Sons, succeeded to and became the owner of the property, business, good-will and trade of the firm, including said copyright and agreement, and assumed the risk and responsibility of the publication and sale of said work, and continued to supply the public with copies of the same at reasonable prices, until the publication and sale, hereinafter mentioned, of the new and revised edition of said work were made; that, under the statutes of the State of New York, the plaintiff, upon the death of John Blair Scribner, was entitled

to the continued use of the copartnership name of Charles
Scribner's Sons, and has carried on the business under that
firm name; that by reason of the publication of nearly 100,000
volumes of said work, the stereotype plates had become worn
and the impressions therefrom sometimes faint and illegible;
that the authoress, in or about 1880, prepared a revised edition
of her work, making many corrections and additions; that
prior to the taking out of a copyright therefor, and on or
about September 8, 1880, the plaintiff, by an agreement with
said authoress, became interested in and assumed the risk and
responsibility of the publication of the new, revised and en-
larged work; and that, on or about September 18, 1880, under
the firm name of Charles Scribner's Sons, he secured, accord-
ing to law, a copyright of said new work as proprietor thereof,
under the same title, and published said new work, and sup-
plied the public with copies of the same at reasonable prices.

The bill then alleges that the defendant Belford, Clarke &
Co., printers, publishers and booksellers doing business at
Chicago, Illinois, and the defendants Donohue and Henne-
berry, printers and bookbinders doing business at said Chicago
under the firm name of Donohue & Henneberry, well knowing
the plaintiff's rights, and intending to infringe said copyrights,
at Chicago and elsewhere, without the allowance and consent
of the plaintiff, published and sold a work in one volume,
issued by them under various titles and with different title-
pages, and purporting to be edited by different persons and to
be written and compiled by different authors, (the body of
said work and all the matter contained therein, excepting the
title-pages and matters relating thereto, being the same,) said
work, consisting of 351 pages, being a compilation of receipts
for cooking, treating of the same subjects and covering the
same topics, and adapted and intended for the same portion
of the public, as the plaintiff's said book, and being a copy
from and an infringement and piracy of the plaintiff's said
work; that more than 170 receipts contained in said piratical
work were copied *verbatim et literatim* from the said copy-
righted work of the plaintiff, said receipts comprising a part
or the whole of over 150 pages of said piratical work; that

many other parts of that work, besides said 170 receipts, are infringements upon the copyrights of the plaintiff, and many of the remaining receipts are in fact copied from the plaintiff's book, with certain changes in the phraseology thereof; and that the subjects in the piratical work and the index thereto are arranged in the same order, and with almost the same headings, as in the plaintiff's work, and were copied and imitated therefrom. The bill then sets forth the particulars of the piratical work and of the various title-pages and covers thereof.

The bill prays for an injunction to restrain the defendants from printing, publishing, binding, selling or exposing for sale any copies of said piratical work, and for an account and payment of the profits of sales of it.

The defendants were duly served with process and appeared, and the plaintiff moving for a preliminary injunction, the court, on January 21, 1884, entered an order, on notice, referring the bill, affidavits and other proofs to a master in chancery, to examine and report whether the bill and affidavits made a case entitling the plaintiff to an injunction, and meantime issuing a restraining order against the defendants, and ordering them to keep an account of all books sold by them at retail.

The master, after hearing the parties, made the following report, on February 27, 1884: "Upon hearing the arguments of counsel, and an examination of the testimony and exhibits submitted to me upon this reference, I find and report that the defendants have violated the rights of the complainant in printing, publishing and selling all of the certain books described in said bill of complaint as having been published by the defendants. That said works, though purporting to be edited and compiled by different persons, whose names appear therein, in one instance the title being partially changed, and in others entirely so, are largely compilations of the recipes of the complainant, and that the matter and language of said books is the same as the complainant's in every substantial sense, but so distributed through said books of defendants as to become incorporated into those works, making it almost impossible to

separate the one from the other. I find, also, that the defendants have been guilty of an appropriation of the topics in use in complainant's book as well as the index, with slight and occasional changes, and that as to the balance of said publications of defendants there constantly occurs the use of complainant's language, with occasional change of phraseology, with the general arrangement and headings preserved. In all of the alleged illegal publications the defendants are shown to have used the material of the complainant instead of 'resorting to original sources of information.' The case, therefore, in my estimation, comes within the rule laid down by the court in *Myers* v. *Callaghan*, 10 Bissell, 139. I am, therefore, of the opinion that the defendants have infringed the rights of complainant, as charged in the bill, and recommend that an injunction issue as prayed."

On notice, the court, on March 14, 1884, entered an order confirming the master's report, and enjoining the defendants from printing, publishing, binding, selling or exposing for sale, or being in any way concerned in exposing for sale or disposing of any copies of their book described in the bill, or infringing upon the copyright of the plaintiff in his book described in the bill.

On the 4th of April, 1884, the defendants put in a demurrer to the bill, on the ground that it did not allege that, before the publication of the plaintiff's book, a printed copy of its title was delivered at the office of the Librarian of Congress, or deposited in the mail addressed to him at Washington; that it did not allege that within ten days after publication two copies of the book were delivered at the office of the Librarian of Congress or deposited in the mail addressed to him at Washington; and that it did not show that a notice of such copyright had been inserted, in the form prescribed by law, in the several copies of each edition of the book which had been published.

On the 12th of May, 1884, the court entered an order sustaining said demurrer, giving leave to the plaintiff to amend his bill, and ordering that the defendants plead, answer or demur to the bill as amended.

On the 24th of June, 1884, Donohue and Henneberry filed a separate answer to the bill, and on the same day the corporation defendant filed its separate answer. Each answer took issue on all the material allegations of the bill. The answer of Donohue and Henneberry alleged that they were employed by the corporation defendant to manufacture the books complained of in the bill; and that the plaintiff was not entitled to a discovery from them, as asked in the bill, as to the number of copies of the piratical book they had on hand, because such discovery would subject or tend to subject them to a penalty or forfeiture. The answer of the corporation took issue on the material allegations of the bill, and alleged that the corporation employed the firm of Donohue & Henneberry to print and manufacture the alleged infringing book, admitted its alleged sale thereof, and averred that it had sold about 9500 copies of the principal book and about 44,000 copies of a cheap edition, but averred that the plaintiff was not entitled to any discovery from it of the number of books it had on hand, because such discovery would subject or tend to subject it to a penalty and forfeiture.

On the 3d of September, 1884, the plaintiff filed replications to the two answers, and on the 17th of October, 1884, the court referred the case to a master in chancery, " to take proof and state an account herein." It appears by the record that in November and December, 1884, and January, 1885, the testimony on behalf of the plaintiff was taken in the city of New York before a United States commissioner, and was filed in the court on the 28th of February, 1885. The testimony on the part of the defendants was taken before the master in Chicago, in May, July and November, 1885, and was filed in the court on the 27th of April, 1886.

On the 17th of November, 1886, an order was entered stating that, on motion of the plaintiff and with the consent of the defendants, leave was given to the plaintiff to file an amendment to his bill in place of the original amendment, which had been removed from the files; and on the same day amendments to the bill were filed, setting forth that the firm of Charles Scribner & Co., on the 26th of May, 1871, delivered

at the office of the Librarian of Congress at Washington, a printed copy of the title-page of the book, which title-page is set forth in the amendments; that on the same day said librarian recorded the name of such book; that on the same day, within ten days from the publication of the book, the firm delivered at the office of said librarian two printed copies of the book, which were complete copies thereof, and of the best edition thereof published; that prior to the publication of the book, said firm caused to be printed, on the page immediately following the title-page of each copy published, words giving notice of the copyright; that such words and notice are printed in each copy of said book published; and that said firm did everything required by law for the securing of the copyright. The amendments also set forth that the plaintiff, under the firm name of Charles Scribner's Sons, on the 18th of September, 1880, delivered at the office of the Librarian of Congress, at Washington, a printed copy of the title-page of the new edition of said book, containing the printed words of the title, and on the same day the librarian recorded the name of such book; that on the 15th of November, 1880, and within ten days from the publication thereof, the plaintiff delivered at the office of said librarian two printed copies of the book, of the best edition thereof published; that prior to the publication of the book he caused to be printed, on the page immediately following the title-page of each copy published, words giving notice of the copyright; that such words and notice are printed in each copy of said book published; and that he did everything required by law for the securing of his copyright in said book.

The record shows that on the 30th of November, 1887, an entry was made in the record of proceedings in the cause, setting forth that the case on that day came on to be heard on pleadings, proofs "and master's report and exceptions." There are not in the record any exceptions to a master's report.

There is an entry in the record of the proceedings in the cause, made February 23, 1888, setting forth an order which states that, on motion of the plaintiff's solicitors, he was allowed "to file a certified copy of copyright in place of such

Statement of the Case.

proof heretofore filed and lost." The record shows that on the 24th of February, 1888, there were filed in the court the certified copies of papers from the office of the Librarian of Congress, which are set forth in the margin.[1]

---

[1] LIBRARY OF CONGRESS,
COPYRIGHT OFFICE, WASHINGTON.

No. 4933 B.

*To wit:*

Be it remembered that on the 26th day of May, anno Domini 1871, Charles Scribner & Co., of New York, has deposited in this office the title of a book, the title or description of which is in the following words, to wit:

Common Sense in the Household;

A Manual of Practical Housewifery.

By Marion Harland.

New York:

Charles Scribner & Co., 1871.

the right whereof they claim as proprietors in conformity with the laws of the United States respecting copyrights.

A. R. SPOFFORD, *Librarian of Congress.*

Two copies of the above publication deposited May 26, 1871.

I, A. R. Spofford, Librarian of Congress, hereby certify that the foregoing is a true copy of the original record of copyright in the Library of Congress. In witness whereof I have hereto set my hand and affixed the seal of my office this 12th day of November, 1883.

[SEAL.]     . A. R. SPOFFORD, *Librarian of Congress.*

Librarian of Congress,
Copyright office.
United States of America.

LIBRARY OF CONGRESS,
COPYRIGHT OFFICE, WASHINGTON.

No. 14239 L.

*To wit:*

Be it remembered that on the 18th day of September, anno Domini, 1880, Charles Scribner's Sons, of New York, have deposited in this office the title of a book, the title or description of which is in the following words, to wit:

Common Sense in the Household;

A Manual of Practical Housewifery.

By Marion Harland.

. (New edition.)

New York:

Charles Scribner's Sons, 1881.

the right whereof they claim as proprietors in conformity with the laws of the United States respecting copyrights.

A. R. SPOFFORD, *Librarian of Congress.*

On the 6th of April, 1888, the defendants filed in the clerk's office a motion to strike from the record, as evidence in the cause, the certificates of the Librarian of Congress so filed, because (1) neither of them was in proper form or properly authenticated; (2) neither of them was in compliance with the order of February 23, 1888, " because no other certificates having the like purport or effect had been ever offered in evidence nor lost from the files in said cause; " and (3) they were incompetent and irrelevant.

On the 7th of April, 1888, the court entered an order overruling the motion to strike from the files " the certificates by the Librarian of Congress, filed as testimony in this cause."

The cause was heard by Judge Blodgett, who filed an opinion on April 9, 1888, a copy of which is contained in the record, and on the same day the court entered a decree which stated that the case was heard upon the bill, answers and replications, and proof taken in the cause, documentary, oral and written, " and upon the master's report herein, with exceptions thereto." The decree granted a perpetual injunction restraining the defendants and each of them, their officers and agents, from printing, publishing, binding, selling or exposing for sale, or causing or being in any way concerned in selling or exposing for sale, or otherwise disposing of any copy of the book described in the bill as having been published by the defendants under various titles, (which titles are set forth,) and any copy of said book under any title whatsoever. The decree adjudged that the defendants' book was an infringement upon the rights of the plaintiff as owner of the copyright of his book, the title of which is given in the decree, and that he was entitled to damages for such infringement; and upon the proof the court fixed the amount of such damages at $1092, " being the amount of the profits shown by the proof

---

I, A. R. Spofford, Librarian of Congress, hereby certify that the foregoing is a true copy of the original record of copyright in the Library of Congress. In witness whereof I have hereto set my hand and affixed the seal of my office this 25th day of October, 1884.

[SEAL.]                          A. R. SPOFFORD, *Librarian of Congress.*

to have been made by defendants from the defendants' infringement," and that the plaintiff recover that sum from the defendants and each of them, with costs. The defendants took an appeal to this court.

*Mr. Newton A. Partridge* for appellants.

I. The first assignment of error relates to the recital in the decree that the final hearing was upon the master's report and exceptions. While this error is clearly established upon the face of the record, counsel for the appellants do not desire to discuss it at length, and deem it immaterial, unless some advantage bearing upon the extent and nature of the evidence before the court to sustain its findings of fact and its decree upon the final hearing, should be attempted by appellee. In that event, the recital complained of might become material, and it is for that reason alone that the necessary space has been taken to clearly raise the point.

II. It is further contended that the complainant was not the owner of the two copyrights in said book entitled, "Common Sense in the Household," in question in this case, and that he was not entitled to file and maintain his bill herein. The bill of complaint states that M. Virginia Terhune, the wife of Edward P. Terhune, was the author of said book, and her evidence shows that at the time when said book was written, she resided in Newark, New Jersey, with her said husband, and she stated that she was married in 1856. The agreement stated the name of the author as Mrs. E. P. Terhune (Marion Harland) of the city of Newark, State of New Jersey. At common law a married woman has no interest in personal property acquired by or through her during marriage, but it belongs absolutely to her husband.

No proof was introduced of the provisions of the laws of New York or of New Jersey or of Massachusetts, where it was stated said M. Virginia Terhune resided at the time said bill was filed and no proof was submitted to show that the laws of either of said States differed from the common law; and the presumption is that the common law is in force in the

different States unless the contrary is pleaded and proved. *Crouch* v. *Hall*, 15 Illinois, 263. But in case of personal property acquired after marriage by her means, such property belongs absolutely to the husband; so that, if a legacy should be given to the wife during coverture, and the husband should die before it is paid or due, it would not belong to the wife, but to the husband's executor.

III. No valid copyright was obtained in the first or 1871 edition of the said book, "Common Sense in the Household," because the statute was not complied with. The statute required delivery at the office of the Librarian of Congress or deposit in the mail addressed to the said librarian, of two copies of such copyright book "within ten days from the publication thereof." The uniform construction which has been placed upon this provision of the law is the same as if it read ten days from and after publication, and such is the ordinary, well-determined meaning of the words employed. In discussing the same phraseology under the act of February 3, 1831, although the period of time was different, the court used the following language: "Undoubtedly the three conditions prescribed by the statute, viz.: . . . . and the depositing of the copies of the book within three months after the publication, are conditions precedent to the perfecting of the copyright." *Callaghan* v. *Myers*, 128 U. S. 617, 652.

IV. The copyright in the new or 1880 edition of said book, "Common Sense in the Household," was claimed to be invalid because the proof is not sufficient to show that the two copies of said book were duly deposited to complete said copyright.

V. It is claimed that said Circuit Court committed error in granting the motion of the complainants to file a certified copy of copyright in place of such proof alleged theretofore to have been filed and lost, and in refusing to grant the motion on behalf of the defendants to strike from the record in said cause the certified copies which were filed February 24, 1888.

VI. The decree ought to have been entered for the amount of $1092, against said defendant corporation, Belford, Clarke

& Co., alone, and it was error to decree Michael A. Donohue and William P. Henneberry, and each of them, to pay any part of said amount. The present case comes clearly within the rule announced in *Elizabeth* v. *Nicholson Pavement Co.*, 97 U. S. 126, where an identical question was discussed and the true rule laid down, which is, that unless all of the defendants realize a profit from the infringement, a joint decree for the payment of such profit should not be entered against them. It was there held to be error to enter a decree against the defendants who did not participate in the profits shown to have been thus realized for the payment of such profits.

VII. The decree ought to have been entered for only the proportion of the profits realized by said corporation, Belford, Clarke & Co., from the sale of the said books complained of, which was derived from the use of the matter copied from said book entitled " Common Sense in the Household."  This is the case of a cook-book. Its matter consists of short receipts classified together under appropriate heads. Many of these vary but little from some others contained under the same heading. The book is not constructed upon the plan of the reports considered in *Callaghan* v. *Myers*, where it was stated that the value of the book consisted in its integrity as a whole. Had the books complained of contained other matter so incorporated with the copyright matter that the same could not be separated, and so that the lawful matter would be useless without the use of the matter unlawfully obtained, a different principle would apply. But here the evidence shows that all the receipts contained in the books complained of which were wholly or partly identical with the matter contained in said book, " Common Sense in the Household," could be separated without difficulty from the other receipts.

*Mr. Walter C. Larned* for appellee.

Mr. Justice Blatchford, after stating the case, delivered the opinion of the court.

The assignments of error filed by the defendants in this

court allege that the final decree of the Circuit Court is erroneous (1) because it recites that the hearing was upon the master's report, with exceptions thereto, when there was no report nor any exceptions thereto before the court at the final hearing; (2) because it finds that the plaintiff is entitled to damages, when the only remedy in equity is by injunction and an account of profits; (3) because it finds that copyright in the book, the title of which is set forth in the bill, was vested in the plaintiff as proprietor thereof, when the proofs show that he never was its proprietor, and therefore could not procure a valid copyright therein; (4) because the proofs did not show that any valid copyright had been procured at any time in said book or in either edition thereof; (5) because the decree goes for the entire amount of profits realized by the corporation defendant, which was the proprietor of the book which is alleged to infringe the rights of the plaintiff, instead of such part of the profits as was realized by reason of such infringement; (6) because it orders the defendants Donohue and Henneberry to pay the amount of said profits, when the pleadings and proofs fail to show that any part of such profits was realized by them or either of them; (7) because the court granted the motion of the plaintiff, after the hearing of the cause, to file proofs therein, and denied the motion of the defendants to have such proofs stricken from the record; and (8) because the findings and decrees of the court were against the law and the evidence.

(1) It is true that the record shows that, on the 17th of October, 1884, the court made an order referring the cause to a master in chancery "to take proof and state an account herein." No report afterward made is found in the record. The only special report found therein is one of the master, hereinbefore set forth, filed February 27, 1884, on the question of the issuing of a preliminary injunction. To that report no exceptions appear to have been filed. Not only does the final decree, of April 9, 1888, state that the cause was heard upon bill, answers, replications and proof, " and upon the master's report herein, with exceptions thereto," but the opinion of Judge Blodgett says: " The case was referred to one of the

masters of the court, to take proofs and report findings upon the question of infringement, and he has reported that the defendants, by the publication and sale of two books set out and described in the bill of complaint, one under the title of 'How to Cook,' and the other under the title of 'Economy Cook Book,' have infringed upon the complainant's copyright by incorporating into their said publication something over fifty pages of the matter of complainant's book, as well as substantially following the arrangement of subjects and headings. *Myers* v. *Callaghan*, 10 Bissell, 139. I have carefully examined the proof upon which the master bases his findings, and am satisfied that the finding was fully justified by the testimony. The case is now before me on defendants' exceptions to the master's findings, and on complainant's motion for a decree in pursuance of the master's report."

The report thus referred to in the decree and in the opinion is manifestly the report filed February 27, 1884, and there must have been exceptions thereto taken by the defendants. The testimony on which that report was based is not found in the record. The only other master's report in the record is one made by him reporting the testimony which he had taken in the cause in Chicago in May, 1885, and subsequently, and which report is dated April 20, 1886, and was filed April 27, 1886. If exceptions were taken by the defendants to either or both of those reports, it was their duty as appellants to have them brought into this court as part of the record; and if they took no exceptions, the reports stand without exception. The first assignment of error is of no avail to the defendants.

(2) It is also contended that the plaintiff is not the owner of the two copyrights in question, because the authoress of the book was a married woman, residing with her husband in New Jersey, when the agreement between her and Charles Scribner & Co. was made, on April 1, 1871; that at common law a married woman has no interest in personal property acquired by her during marriage, but it belongs absolutely to her husband; that no proof was introduced of the provisions of the laws of New York, or those of New Jersey, or

those of Massachusetts, in which latter State the bill averred
that the authoress resided, at the time the bill was filed, and
no proof was offered to show that the laws of any of those
States differed from the common law, and the presumption
was that the common law was in force in those different
States; that it does not appear that the authoress had any
right to sell her husband's property or to make contracts in
regard to it; that this suit ought to have been brought in his
name as plaintiff; and that if, by ratification, he had con-
firmed her right to hold and deal with the property in ques-
tion, then the suit ought to have been brought in her name,
as owner in fact of the copyright.

On this point the Circuit Court said, in its opinion, that, as
the proof showed that the authoress from time to time settled
with the owners of the copyright for her royalties, the court
would presume that her legal title as the author of the books
was in some due and proper manner conveyed to and vested
in the persons who secured the copyright thereof; and that
acquiescence for so many years, by all the parties, in that
claim of proprietorship in the copyright, was enough to answer
the suggestion of the husband's possible marital interest in his
wife's earnings. This is, we think, a sound view.

The opinion of the Circuit Court further correctly said:
"It is certain that, if there is any ownership in this work by
copyright at all, it is in the complainant, in whose name the
copyright was taken and now stands, so far as is shown by the
proof in this case. If the law of the domicil of Mrs. Terhune
entitles her husband to any part of her earnings, that is a
matter to be settled between her husband and the complain-
ant, and which the defendants cannot interpose as a defence
to a trespass upon the complainant's property rights in this
copyrighted book."

(3) It is also contended for the defendants that the two
contracts in the case, one dated April 1, 1871, between the
authoress and Charles Scribner & Co., and the other dated
November 6, 1884, between her and Charles Scribner's Sons,
did not vest the title of the book in the plaintiff or in those
through whom he claims title; and that those agreements did

not show that she parted with the title.to the book of which she was the authoress. But we are of opinion that the proofs are to the contrary, and that the copyright was secured in accordance with law, in both editions of the book, by the proprietor, and that the plaintiff owns such copyright.

(4) Objection is also made that it is stated in the amendments to the bill that a printed copy of the title-page of the book first published was delivered at the office of the Librarian of Congress at Washington, May 26, 1871; that on the same day Charles Scribner & Co., within ten days from the publication of the book, delivered two printed copies of it at the office of the Librarian of Congress; that § 4956 of the Revised Statutes required that the two copies should be delivered at the office of said librarian or deposited in the mail addressed to him "within ten days from the publication" of the book; that the testimony shows that the book was published May 27, 1871; and that, therefore, the two printed copies of it were deposited one day before the publication, and the law was not complied with.

But we are of opinion that the statute was substantially complied with. The two copies were deposited before the expiration of ten days after the publication, and that was all that was necessary. Ten days were allowed after the publication within which the two copies were required to be deposited, and, within the meaning of the statute, they were so deposited, although the deposit took place one day before the publication. The case is analogous to the ruling of this court as to the protest or notice of dissatisfaction to be given to the collector in a customs case, where the statute required it to be given within ten days after the liquidation of the duties, and it was given after the collector's decision and before the final liquidation, and it was held that, as the notice was given before ten days after the final liquidation had expired, it was a sufficient notice. *Davies* v. *Miller*, 130 U. S. 284.

(5) It is also contended that the copyright of 1880 was invalid, because no sufficient proof appeared that two copies of that book were duly deposited. We are of opinion that the certificate of the Librarian of Congress, set forth in the

margin, as printed in the record,[1] that two copies of the new edition of the plaintiff's copyrighted book were received by him November 15, 1880, which was within ten days after the publication, was competent evidence, although the certificate was not under seal.

(6) It is also contended that the Circuit Court erred in granting, on February 23, 1888, the motion of the plaintiff "to file a certified copy of copyright in place of such proof heretofore filed and lost," and in refusing, on April 6, 1888, to grant the motion of the defendants to strike from the record the certificates of the Librarian of Congress which had been filed in pursuance of the order of February 23, 1888. The ground of making the order of February 23, 1888, was stated in it to be that proof by a certified copy of copyright had been theretofore filed and lost, and that the new certified copy was to be in place of such proof; and in the motion made by the defendants to strike the new certificates from the record, it was stated that "no other certificate having the like purport or effect had been ever offered in evidence nor lost from the files in said cause." But the court, by overruling such motion, must necessarily have found that the fact was otherwise, and that such former certificates had been filed as proof and had been lost. There is nothing in the record to control this finding of fact.

(7) It is urged that the decree ought to have been entered for the sum of $1092 against the defendant corporation alone, and that it was error to decree the other two defendants to pay any part of that amount; that those two defendants manufactured the books complained of, and did not sell them

---

[1] New York, *Nov. 15th*, 1880.

Mr. A. R. Spofford, the Librarian of Congress, Washington, D.C.

Dear Sir: We send you to-day by mail (2) two copies of Marion Harland's "Common Sense in the Household," new edition, to complete the copyright for that book.

The certificate for title entry is numbered 14239 L.

Please acknowledge their receipt.

Yours truly,                    Charles Scribner's Sons.

2 copies of the above received Nov. 15, 1880.

A. R. Spofford, *Librarian of Congress.*

or offer them for sale; that the corporation defendant, published and sold the books and was the only defendant which received any part of the profits arising from their sale; and that it was from the books of account of the corporation defendant that the account of profits was stated on which the decree for damages in the case was based. To support this view, the case of *Elizabeth* v. *Nicholson Pavement Co.*, 97 U. S. 126, 139, 140, is cited to show that unless all of the defendants realize a profit from the infringement, a joint decree for the payment of such profits ought not to be entered against them; and that the defendants who did not participate in the profits realized ought not to be charged with any part of those profits. It is contended that while the defendants Donohue and Henneberry might have been called upon to account for the profits realized by them from manufacturing, or printing and binding the books complained of, no proof of such profits was offered, and, therefore, no decree for the payment of any profits could lawfully be entered against them. The decree sets forth that the $1092 is the amount of the profit shown by the proof to have been made by the defendants from the defendants' infringement.

To this view it is replied by the plaintiff that, as the defendants Donohue and Henneberry printed the books by contract with the corporation defendant, and as, under the copyright law, Rev. Stat. § 4964, both the printer and the publisher are equally liable to the owner of the copyright for an infringement, and as it is to be inferred that Donohue and Henneberry made a profit from printing the piratical books, they were, therefore, sharers in the profits realized from the sale of the books, and were *participes criminis* with the defendant corporation in the infringement; that the two sets of defendants together printed and published the books, and were practically partners in doing it, the corporation doing one part, and the other defendants the other part of the printing and publishing; and that all the parties concerned ought to be held to an account to the owner of the copyright in respect to the profits derived from the printing, publishing and selling, without all of which combined there

could have been no infringement.    We think these views are sound.

(8) It is contended by the defendants that the decree ought to have been only for that proportion of the profits realized from the sale of the books, which was derived from the use of the matter which had been copied from the copyrighted books.    But the report of the master, filed February 27, 1884, speaking of the books printed and published by the defendants, said that he found "that said works, though purporting to be edited and compiled by different persons, whose names appear therein, in one instance the title being partially changed and in others entirely so, are largely compilations of the recipes of the complainant, and that the matter and language of said books is the same as the complainant's in every substantial sense, but so distributed through said books of defendants as to become incorporated into those works, making it almost impossible to separate the one from the other."

The rule is well settled, that, although the entire copyrighted work be not copied in an infringement, but only portions thereof, if such portions are so intermingled with the rest of the piratical work that they cannot well be distinguished from it, the entire profits realized by the defendants will be given to the plaintiff.    This was the rule laid down by this court in *Callaghan* v. *Myers*, 128 U. S. 617, 665, following *Mawman* v. *Tegg*, 2 Russell, 385, 391, and *Elizabeth* v. *Nicholson Pavement Co.*, 97 U. S. 126, 139.

We have thus reviewed the points urged in the brief of the appellant, and do not deem it necessary to consider any others.

*Decree affirmed.*