WHITE–SMITH MUSIC PUB. CO. v. APOLLO CO. (two cases).

(Circuit Court, S. D. New York. June 21, 1905.)

Nos. 8,126, 8,127.

1. COPYRIGHT—SUIT FOR INFRINGEMENT—TITLE TO SUPPORT.

Where the composer of a piece of music has placed it in the hands of a publishing company for publication and sale, it may reasonably be inferred that he intended to authorize the company to copyright the same; and where it does so in its own name, and he afterward ratifies its action, it is vested with the legal title to the copyright, which will support an action for its infringement.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, § 68.]

2. SAME—INFRINGEMENT—MUSICAL COMPOSITION.

A musical composition, as an idea or intellectual conception, is not subject to copyright, but only its material embodiment in the form of a writing or print may be copyrighted; and a copyright of such a printed composition is not infringed by a perforated record or sheet designed for use with mechanism to play the composition on a musical instrument.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, § 63.

Matters subject to copyright, see note to Cleland v. Thayer, 58 C. C. A. 273.]

In Equity.   Suits for infringement of copyrights.

Dickerson, Brown, Raegener & Binney (Charles E. Hughes, Edwin H. Brown, and Alexander P. Browne, of counsel), for complainant.

Wilcox & Brodek (Charles S. Burton and Munday, Evarts & Adcock, of counsel), for defendant.

HAZEL, District Judge.   These actions were brought to restrain the alleged infringement of copyrights in the musical compositions "Little Cotton Dolly" and "Kentucky Babe Schottische," composed by Adam Geibel.   The bill avers that complainant was the publisher and proprietor of both copyrights, the musical compositions having been assigned and transferred to it by the composer.   The answers are denial of infringement and of complainant's title to the copyrights in question.   The elicited facts, which are not in serious conflict, apply to both cases, and the records in each are substantially the same.   The legal principles involved, though important, are not, in view of prior adjudications, difficult of application.   Complainant contends that the copyrights mentioned have been unlawfully infringed by the defendant, which concededly has sold the copyrighted musical compositions in the form of perforated records or sheets adapted to mechanically reproduce the music upon the pianoforte, pianola, and other musical instruments.   The general question raised is whether the perforated music sheets for use in connection with mechanism for playing musical instruments is an infringement of complainant's copyrighted musical composition.   The proofs show that perforated music sheets corresponding to staff notations are produced in various ways by persons skilled in the art, technically called the "cutter" or "arranger."   Perforated matrices are prepared either from a printed sheet of music, from a perforated music roll, or by means of an automatic recording device, which simultaneously operates to produce a matrix while music is being played upon the piano.   In the preparation of the matrices, as distinguished from a music roll prepared by a recording device, perforations or slots of varying width, are indicated; their positions and character are longitudinally and transversely arranged and accurately defined by a system of measurements correlative with the staff notations.   The impracticability of reading a perforated sheet of music for the purpose of singing or playing the composition represented by the perforations is not seriously disputed, although complainant claims that the automatic records, like the staff notations, may be deciphered and learned.   The evidence, however, quite conclusively establishes that the single purpose of the perforated sheets is to mechanically reproduce musical sounds, and that they are not, like the sheet music, addressed to the vision, or intended to be read.

Before discussing the principal point involved, it is proper that the question of disputed title of the copyrights be first considered. The defendant contends that the musical composition "Little Cotton Dolly" was licensed to the complainant as publisher, subject to

the payment of royalties, and was not transferred with the view of divesting the composer of the title therein. The court has considered this question, and the phraseology of the agreement of June 18, 1897, by which it probably might be concluded that only the right to publish the composition had been previously granted. Such an interpretation of the contract, however, in view of the oral evidence and acts of the parties, is not warranted. The proofs show, inter alia, that the composer authorized the copyrighting of the musical composition in the name of the complainant. The composition was delivered to the complainant by the composer in May, with the understanding that it should be published, and subsequently, in writing, he expressly authorized complainant to copyright the same. At this time, however, the composition had already been copyrighted by complainant in accordance with the laws of the United States respecting copyrights. Giving consideration to all the facts and surrounding circumstances, no repugnancy is perceivable between the agreement mentioned and any prior arrangement or understanding that complainant should possess the composition as its proprietor. The question is whether in fact there was such an assignment or transfer of the musical composition before copyrighting as to carry with it the privilege given by the statute to the composer. As the testimony upon this point is not entirely free from indefiniteness, we must look to the acts of the parties to ascertain their intention. It is not a strained presumption, giving effect to the transaction and the proofs, that complainant or its agent, Mr. White, who afterwards assigned the same to the complainant, was vested with the legal title as proprietor of the composition. It may reasonably be inferred that the composer, having placed the composition with the publisher for publication and distribution, intended to authorize him to obtain a copyright in his name, or in that of the corporation in whose behalf the assignment appears to have been taken. Mifflin v. White, 190 U. S. 263, 23 Sup. Ct. 769, 47 L. Ed. 1040; Belford v. Scribner, 144 U. S. 505, 12 Sup. Ct. 734, 36 L. Ed. 514. It was held in Callaghan v. Myers, 128 U. S. 658, 9 Sup. Ct. 177, 32 L. Ed. 547, that a written assignment may be necessary to convey title after obtaining a copyright, but a publisher undoubtedly may become the owner by parol transfer of the rights of the author or composer. Moreover, it clearly appears that the composer, Geibel, had knowledge of the copyrighting by the complainant prior to the agreement for royalties, and acquiesced therein. The later agreement contained nothing derogatory to the prior transaction or transfer of the composition, and would seem, in view of the facts, to be a ratification of that which had gone before. Hence it is sufficiently established by the evidence that the complainant had the exclusive right, as proprietor, to multiply copies of the copyrighted musical composition, and to expose the same for sale.

As stated, the important question for consideration is whether defendant's method of representing and reproducing the musical compositions infringed the copyrights of the complainant. The principle thought to control, based upon the Revised Statutes, is

found in Perris v. Hexamer, 99 U. S. 674, 25 L. Ed. 308. It is there stated:

"A copyright gives the author or the publisher the exclusive right of multiplying copies of what he has written or printed. It follows that, to infringe this right, a substantial copy of the whole or of a material part must be produced."

By section 4952 of the Revised Statutes [U. S. Comp. St. 1901, p. 3406], the author or proprietor of any musical composition, upon compliance with the provisions of the copyright act, is given the exclusive liberty of copying and vending the same. Are the perforated music sheets or rolls, which are designed to mechanically represent or reproduce the copyrighted musical composition, copies thereof, within the meaning and intent of the statute? What did Congress intend by the words "musical composition"? These questions, though not entirely new, are interesting and important. The words "musical composition" undoubtedly relate to the intellectual conception of the composer; but manifestly a careful reading of the copyright law, in connection with the authorities construing the act, indicates that protection only of the material semblance in which the musical composition finds expression is afforded. Ditson v. Littleton, 67 Fed. 905, 15 C. C. A. 61. The musical composition, as an idea in the concrete, is not copyrightable as such. That which gives the conception corporeal and tangible existence is the subject of copyrighting. To hold otherwise, indeed, would be a wide departure from the obvious intention of Congress in extending to the author, inventor, designer, proprietor, etc., the protection secured by statute. But it is vigorously insisted that the proofs show that the perforated music sheet is in fact a record of the musical composition. Many witnesses of musical distinction have testified that the perforations are a form of notations without bars or measurements, and hence not only correspond with the tones of the musical composition, but that a perforated music roll or sheet is actually a record thereof. Opposed to this contention is the suggestion that under the constitutional power of Congress "to promote the progress of science and useful arts, by securing for limited times to authors and inventors, the exclusive right to their respective writings and discoveries," a copyrightable musical composition must be a writing, and not, as already intimated, a mental conception not reduced to material form. The meaning of the word "writings," as employed in the Constitution, has been expressly defined in Lithographic Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279, 28 L. Ed. 349, to include "all forms of writing, printing, engraving, etching, etc., by which the ideas in the mind of the author are given visible expression." The restricted definition of the word "writings" does not, it is thought, permit the inclusion in section 4952 of the Revised Statutes [U. S. Comp. St. 1901, p. 3406] of a musical conception, or the inclusion of collated musical sounds or expressions of a musical composition. The words of the statute have reference to the tangible object that appeals to the sense of sight, and that which is susceptible of being reproduced by printing, copy

ing, publishing, etc.   It is contended that the enactment of January 6, 1897, § 4966 [U. S. Comp. St. 1901, p. 3415], indicates that Congress in the earlier provision, used the words "musical composition" with a view of securing protection to the author for his musical conception.   The later provision inhibits the public performance of a copyrighted musical composition without the consent of the proprietor, unless the same has previously been dedicated to the public.   Werckmeister v. American Lithographic Co. (C. C. A.) 134 Fed. 321.   These two provisions, however, are not conflicting, and I perceive no reasonable objection to their standing together.   I am of opinion that the reference to musical compositions, as employed in section 4952, is restricted to a writing, as that word is defined in the Sarony Case, supra.   Moreover, the perforated sheets of music or records are not copies of the musical composition protected by the copyright laws.   The significance of the word "copying," as applied to the subject under consideration, has been several times legally construed.   Kennedy v. McTammany (C. C.) 33 Fed. 584;   Boosey v. Whight [1899] 1 Ch. Div. 836;   Stern v. Rosey, 17 App. D. C. 562.   In the Kennedy Case, which was decided in 1888, Judge Colt held that perforated music rolls or strips of paper are not infringements of copyright sheets of music, and that such perforated sheets are designed not to occupy the field of sheet music, but are a mechanical invention to mechanically perform tunes.   The Boosey Case was under a statute which did not in terms mention "musical composition," but the work of the composer was referred to in the English copyright act as sheet music, and in the decision appears to have been treated as if it were a book.   Lindley, Master of the Rolls, speaking of the perforated sheets and the meaning of the word "copy," said:

"I have consulted Johnson's, Richardson's, and Murray's Dictionaries to ascertain the meanings attributed to the word 'copy'; and I do not myself think that the perforated sheet can be said to be a copy of the sheet of music, unless the word 'copy' is used in a very loose and inaccurate sense."

In the Stern Case, decided in 1901, it was held (Justice Shepard writing for the court) that the ordinary meaning of the words "copying," "publishing," etc., cannot be enlarged to include the reproduction through the agency of the phonograph of the sounds of musical instruments playing the music composed and published by the complainants.   There apparently is little difference between the facts of the Stern Case and the facts here, except that in that case the alleged infringing record consisted of a disc or cylinder for reproducing sounds by means of the phonograph.   The court further said:

"It is not pretended that the markings upon waxed cylinders can be made out by the eye or that they can be utilized in any other way than as parts of the mechanism of the phonograph."

The principles of the cases mentioned, which manifestly were enunciated after careful consideration, are fully applicable.   The distinction insisted upon by counsel for complainant between a

sheet of music and a musical composition is somewhat chimerical; assuming, as already indicated, that the protection given by the law is for the material form of the author's origination. The precise arguments here presented may not have been as forcibly and comprehensively insisted upon in the former adjudications, involving, as I think, the same subject-matter, but the primal questions were fully considered and decided. Taken together, they are something more than mere persuasive precedents. A settled rule of statutory construction is recognized, which the record does not require me to ignore or reject. In these circumstances, the importance of uniformity of decision in courts of co-ordinate jurisdiction is apparent, and ought to prevail. The proposition that to the author belong his meritorious conceptions and ideas, and the fruits of his labors, is not debatable. The beneficial results, however, to which he is entitled, are protected and are specifically defined by statutory enactment. Such enactment, being in derogation of common-law rights, does not require an altered construction beyond the ordinary import. Brown v. Barry, 3 Dall. 365, 1 L. Ed. 638; Holmes v. Hurst, 174 U. S. 85, 19 Sup. Ct. 606, 43 L. Ed. 904; Banks v. Manchester, 128 U. S. 251, 9 Sup. Ct. 36, 32 L. Ed. 425; Shaw v. Railroad Co., 101 U. S. 557, 25 L. Ed. 892.

My conclusion is that the defendant, in making, using, and vending the perforated music rolls which reproduce the musical compositions "Little Cotton Dolly" and "Kentucky Babe Schottische," for which copyrights were granted, did not violate the equitable rights of the complainant as sole proprietor.

Decree may be entered accordingly, with costs.