## PUBLIC LEDGER CO. v. POST PRINTING & PUBLISHING CO.

(Circuit Court of Appeals, Eighth Circuit. December 17, 1923.)

No. 6208.

1. **Copyrights ⬳24—Publisher held not "proprietor," entitled to copyright.**

Where the principal stockholder in a publishing company agreed in writing with the author to write a book, to be copyrighted in the name of either stockholder or author, *held*, that the writer and the stockholder were the "proprietors," and that the publishing company had no right to secure copyrights on installments published in its paper, and that the copyrights obtained by it were void, under Act March 4, 1909, § 8 (Comp. St. § 9524), though the stockholder owned all but five shares of the stock of the publishing company.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proprietor.]

2. **Copyrights ⬳45—Literary property ⬳6—Written assignment necessary.**

A written assignment is necessary to transfer the proprietorship of a literary work, or the copyright to it, after the copyright has been secured.

3. **Copyrights ⬳75—Defendant held not estopped to deny validity of copyright.**

Defendant *held* in no way estopped to claim that plaintiff's copyright was void, because it was not proprietor; there being no false representation, action of plaintiff in reliance on false representation to its injury, or other elements.

4. **Copyrights ⬳83—Burden on plaintiff in infringement suit.**

In suit for infringement of copyright, the burden was on the plaintiff to prove a valid copyright in itself.

5. **Appeal and error ⬳931(1)—Conclusions of court of equity presumptively correct.**

When a court of equity has considered conflicting evidence and made a finding and decree, it is presumptively correct, and unless some obvious error of law has intervened, or some serious mistake of fact has been made, the finding and decree should be permitted to stand.

Appeal from the District Court of the United States for the Western District of Missouri; John C. Pollock, Judge.

Suit in equity by the Public Ledger Company against the Post Printing & Publishing Company. Decree for defendant, and plaintiff appeals. Affirmed.

Thomas R. White, of Philadelphia, Pa. (Caleb S. Monroe, of Kansas City, Mo., on the brief), for appellant.

Frank M. Lowe, of Kansas City, Mo., for appellee.

Before SANBORN, Circuit Judge, and BOOTH and FARIS, District Judges.

SANBORN, Circuit Judge. This is a suit in equity by the Public Ledger Company, a corporation of Pennsylvania, which was engaged in 1917 in publishing in Philadelphia the Public Ledger, a daily newspaper, against the Post Printing & Publishing Company, a corporation of the state of Missouri, for damages and profits for the infringement by the latter of the alleged copyright of the plaintiff which protected it in the exclusive right to the serial publication in the United States between August 5 and September 17, 1917, of the installments of the

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

manuscript of the book entitled "My Four Years in Germany," by James W. Gerard, our former ambassador to that country. The plaintiff alleged that from August 5 to September 16, 1917, it published each day an edition of the Public Ledger, containing an installment of this manuscript, and daily obtained a copyright of each edition, and the defendant conceded that, if the plaintiff was the proprietor of the work entitled "My Four Years in Germany," during this time, it did what the law required it to do to copyright the daily editions of the Public Ledger containing the publication of the installments, but it denied in its answer that the plaintiff was such proprietor, and averred that its alleged copyright was void, and its counsel contended, and still contend, that the plaintiff was neither the author, the assign, nor the proprietor of the work, or of the installments thereof, that it was therefore not qualified to obtain or have a copyright of it or them, and that its alleged copyright was unauthorized and void. After hearing all the evidence and arguments of counsel, the court below so found and held, and it dismissed the plaintiff's bill. The plaintiff assigned this dismissal as error, and the issue thus presented is decisive of the disposition of this case in this court.

The facts material to the determination of this issue established by the record are these:

The author of the literary work was James W. Gerard. On April 10, 1917, Mr. Gerard and Mr. Cyrus H. K. Curtis made a written agreement that Gerard should write the book, that Curtis should have the serial and book rights, "but after the first edition of the book has been published, or eight months after the manuscript has been delivered," the copyright should revert to Gerard, and that Curtis should pay him $50,000. On August 28, 1917, these parties made another written agreement, whereby they contracted that Curtis should obtain valid copyrights for the books in the United States and six other countries, "and said copyright to be in the name of said Gerard, or in the name of said Curtis, and said Curtis agrees to assign the copyright, if taken in his name, to said Gerard on or before the 1st of March in the year 1918, on which date all copyrights are to revert to the said Gerard."

Mr. Curtis owned all but five of the shares of the plaintiff corporation. Over the objection of the defendant, he testified that he signed the contract on his own behalf and on behalf of the Public Ledger; that they were one; that he and Mr. Gerard fairly understood that the work was to be written for and published in the Public Ledger; that he paid the $50,000 and the Public Ledger Company paid him. He also testified as follows:

"By Mr. White: Q. By whom was the copyright to be taken?

"Mr. Lowe: We object to that, for the reason that the contract itself shows that it was to be taken in the name of James W. Gerard or Cyrus H. K. Curtis.

"A. That answers it.

"By Mr. White: Q. The question is whether the Public Ledger Company was to take the copyright, or who? A. The Public Ledger Company.

"Q. It was to be copyrighted by the Public Ledger Company? A. Yes, sir.

"Q. Did Mr. Gerard thoroughly understand that? A. He certainly did."

[1] The Constitution of the United States empowers the Congress "to promote the progress of science and useful arts, by securing for

limited times to authors and inventors the exclusive right to their respective writings and discoveries." Article 1, § 8, cl. 8. It does not, however, provide that Congress may secure copyrights to any one who thinks, or whose officer thinks, it is entitled to it. The act of Congress provides:

"That the author or proprietor of any work made the subject of a copyright by this act, or his executors, administrators, or assigns, shall have copyright for such work under the conditions and for the terms specified in this act." 35 Stat. 1077, c. 320, § 8 (Comp. St. § 9524).

The Public Ledger Company was not the author or the assign of the author of the work under consideration in August and September. 1917, when the infringement of its copyright is alleged by the plaintiff to have been committed.

But counsel for the plaintiff insist that it was the proprietor of that work, or of such serial rights in it, and of the right to copyright them. But the clear terms of the written contracts forbid such a conclusion. Those contracts are not only the best, but also the most persuasive and legally conclusive, evidence of the proprietorship of the work during these months, and they demonstrate the fact that it was not in the Public Ledger Company, but in Gerard and Curtis. Those agreements were clearly intended to and did restrict the proprietorship, and hence the right to copyright the serial and book rights, to the author, Gerard, and his contractee, Curtis. The clear purpose, meaning, and effect of the provision in these contracts that the copyright should be taken in the name of Gerard or of Curtis, that they should revert to Gerard, and that Curtis should assign those in his name to Gerard before March 1, 1918, was to retain the proprietorship of these serial and book rights of every nature in the author and his contractee, Curtis, until they all should be finally vested exclusively in the author, Gerard, again.

In the face of the plain terms of these contracts, the testimony of Mr. Curtis that he made them for the plaintiff corporation, that he and Gerard understood they were made for the corporation, and that they understood that the copyrights were to be taken out by the Public Ledger Company are not persuasive. They made these contracts, and these written contracts demonstrate in law and in fact who the proprietors of the literary work were, and in whose names the copyrights were to be taken. And it is incredible that it was agreed and understood by Mr. Gerard and Mr. Curtis, at the time they made these contracts, that the very opposite of the written agreements contained in them should be the law and the fact; that Curtis was not the purchaser of the serial and book rights, and the plaintiff corporation, which was not mentioned in the contracts, was, in whole or in part; that the copyrights were not to be taken in the names of Gerard and Curtis exclusively, but some, if not all, of them were to be taken in the name of the plaintiff corporation; that the copyrights not taken in the name of Gerard were not to be taken in the name of Curtis and held by him, and revested by him, as the contract clearly means, in Gerard before March 1, 1918, but that they, or some of them, should be taken in the name of the plaintiff corporation without any agreement with it in

writing or otherwise for their return to Gerard. The plaintiff corporation was not Curtis, although he owned all the stock in it but five shares. In law and in fact, it was a legal entity as distinct from Curtis as was Gerard, and it could act, contract, purchase, and sell only in accordance with the law of its being, through the acts of its board of directors or its other duly authorized officers or agents. And the testimony of Mr. Curtis that he and Mr. Gerard thoroughly understood that Mr. Curtis should not have, and the plaintiff corporation should have, all or any of the ownership or proprietorship of the work "My Four Years in Germany," or of the substantial serial or book rights therein, is neither conclusive nor persuasive that that corporation ever acquired or had any of/them, in the face of the express written contracts of Gerard and Curtis upon these subjects.

In support of their theory that the Public Ledger Company became the proprietor of Mr. Gerard's work, or the serial rights to it, counsel cite and seem chiefly to rely upon Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547; Belford v. Scribner, 144 U. S. 488, 504, 12 Sup. Ct. 734, 36 L. Ed. 514; Black v. Henry G. Allen Co. (C. C.) 42 Fed. 618, 9 L. R. A. 433; Lawrence v. Dana, 4 Cliff. 1, Fed. Cas. No. 8,136; White-Smith Music Pub. Co. v. Apollo Co. (C. C.) 139 Fed. 427; Id., 209 U. S. 1, 28 Sup. Ct. 319, 52 L. Ed. 655, 14 Ann. Cas. 628. These authorities merely hold, however, that, under the special facts and circumstances in those cases, no written assignment of the manuscript of the literary work before a copyright is obtained thereon is indispensable to the transfer of the ownership thereof requisite to authorize the transferee to procure a copyright upon it. Even if these authorities correctly state the law applicable to those cases, a question we find it unnecessary to consider or decide, they are, as it seems to us, inapplicable to the case in hand. In none of those cases was there the plain and express written contract between the author and the party whom he thereby authorized to obtain the copyright that all the copyrights should be taken exclusively in the author's or his contractee's name and that the latter should return them to the author. In other words, while there was substantial evidence in the cases above cited that the author intended to and did vest the proprietorship and the right to procure the copyright in the publisher, so far as he could do so by parol, the written contract and the other competent evidence in this case convince that the author never intended to or did vest or authorize Curtis to vest in the Public Ledger Company any proprietorship of or right to procure a copyright to either the work or the serial or book rights therein, but that, on the other hand, it was expressly agreed in those contracts by Curtis and Gerard that these rights should be and they were retained by him and Mr. Curtis.

[2] It seems to be conceded and is undoubtedly true that a written assignment is necessary to transfer the proprietorship of a literary work, or the copyright to it, after the copyright has been secured. By section 1 of the Act of February, 1831 (4 Stat. 436):

"The author or authors of any book or books * * * not printed and published, * * * and the executors, administrators, or legal assigns of such person or persons, shall have the sole right and liberty of printing" etc.

By section 4:

"No person shall be entitled to the benefit of this act, unless he shall, before publication, deposit a printed copy of the title of such book * * * in the clerk's office of the District Court of the district where the author or proprietor shall reside."

Of these provisions the Supreme Court said:

"Construing these statutes together, it would seem that the word 'proprietor,' in the fourth section, must practically have the same meaning as 'legal assigns' in the first section, and was designed to give to the legal assignee of any author or authors the right to take out the copyright in his own name." Mifflin v. R. H. White Co.; 190 U. S. 260, 262, 23 Sup. Ct. 769, 770 (47 L. Ed. 1040).

By the same mark, the word "proprietor," in the present statute, would have the same meaning as the word "assign" therein. In Fraser v. Yack et al., 116 Fed. 285, 288, 289, 53 C. C. A. 563, a suit for infringement of an alleged copyright, Mr. Barrie, who was writing. his work "The Little Minister," made a written contract with Mr. Lovell whereby he granted and assigned to him "the sole and exclusive right to publish from advance sheets in the United States and Dominion of Canada" this work, which was to be published in the English magazine in 1891, and agreed to deliver to Lovell a complete copy of the work, "either in the form of advance sheets or manuscript, at least two calendar months prior to the serial completion of such .work in England," and Lovell agreed to pay "for the sole and exclusive use of the advance sheets, of said novel in the United States and the Dominion of Canada" £20 upon its publication in America. Upon consideration of this contract, which it will be observed granted rights quite similar to those claimed by the plaintiff, the Circuit Court of Appeals of the Seventh Circuit held that this contract conveyed only a qualified interest in the literary work, and therefore did not constitute Mr. Lovell a proprietor, but that he was a mere licensee, and that a licensee had no right to a copyright, and affirmed a dismissal of the bill.

In New Fiction Pub. Co. v. Star Co. (D. C.) 220 Fed. 994, 995, Edward Goodman, the author and proprietor of an unpublished drama, copyrighted it on July 9, 1913. On December 5, 1913, before copies of the drama were produced for sale, Goodman assigned the "serial rights," which comprehended all publishing rights, including magazine and newspaper publishing rights, to the plaintiff. Thereupon the plaintiff published the drama in a magazine of. which he was the proprietor in March, 1914, and copyrighted the edition of the magazine which contained it, and the drama in it, and sued the defendant for infringement. The court held that the plaintiff did not become the proprietor of the literary work in such a sense as to be, qualified to secure a copyright, but that he was a licensee; that a licensee is not qualified to secure or hold a copyright, and the bill was dismissed. If the plaintiff in the suit in hand had acquired the serial rights to publish in its newspaper the installments of Mr. Goodman's work, it would not thereby have become the proprietor of that work in such a sense as to enable it to secure a valid copyright, but only a licensee and its alleged copyright would have been void.

Again, in Saake v. Lederer, 174 Fed. 135, 136, 98 C. C. A. 571, a suit by Lederer for damages for the infringement of a copyright taken out by him under the Act of March 3, 1891 (chapter 565, § 8, 26 Stat. 1106), for a dramatic composition which was the work of William Meyer Foster, Lederer's right rested in a written contract with Foster, which did not purport to assign Foster's right as an author to Lederer, but, on the contrary, provided that "the said William Meyer Foster agrees to have the within-named play in order to have the protection of the American law copyrighted prior to its appearance in the book trade," and the Circuit Court of Appeals, Third Circuit, held that Lederer's copyright was unauthorized and void, because he was not the proprietor or assign of the author, and therefore was not qualified to secure a copyright.

In Public Ledger v. New York Times (D. C.) 275 Fed. 562, 563, 565, decided in 1921, after consideration of all the authorities to which reference has been made, the Public Ledger sued for an infringement of the copyright of its editions and the articles published therein, which it procured under its contract with the London Times to this effect: That the London Times would produce to a representative of the Ledger in London special news articles and other matter published, enough in advance of the date of their publication in the London Times to enable the plaintiff to mail proofs to Philadelphia; that the plaintiff might make such arrangements as it wished for the sale for publication in any other newspaper or periodicals in the United States and Canada of such news and special articles and other matter; that the London Times would not supply to any other persons "the proofs" for transmission to newspapers in the United States and Canada; and that it would do all that it reasonably could to secure to the Public Ledger the full benefit of the agreement. The court below dismissed the bill on the grounds: (1) That the word "proprietor" in the present act has the same meaning as in the old, and is equivalent to "assign;" (2) that the Public Ledger, under the contract, was not a proprietor, but a licensee; (3) that a licensee cannot obtain a copyright; and (4) that the decision and opinion of the Supreme Court in Belford, Clark & Co. v. Scribner, 144 U. S. 488, 12 Sup. Ct. 734, 36 L. Ed. 514, contains nothing to the contrary. The written contracts, the evidence, the better reasons, and the greater weight of authority seem to us to converge with compelling force to the conclusion that the plaintiff in this case was not the proprietor of the work of Mr. Gerard, or of rights in it which qualified it to obtain a valid copyright.

[3, 4] If the suggestion occurs that the defendant is in any way estopped from defeating this suit for damages for infringement alleged to have been caused by the publication of the serial installments of the work of Mr. Gerard, the answer is that as against the defendant this case lacks indispensable elements of an estoppel. It lacks any false representation by the defendant of any material fact of which the plaintiff was ignorant; it lacks any action of the plaintiff in reliance upon any such false representation to its injury, and many other elements. The case is simple. The plaintiff claimed a copyright of a literary work of another which the defendant published. If it had a valid copyright, it might be entitled to a decree for damages

or profits. If it had no such copyright, it could recover nothing on account of that publication, and the burden was on the plaintiff to prove a valid copyright in itself, a burden which it was unable to bear.

[5] The crucial question recurs: Was the plaintiff corporation the proprietor of Mr. Gerard's work, or of any installments of it, in August and September, 1917, in such a sense that it was qualified to secure and hold a copyright thereof. The court below, after a consideration of the case, decreed that it was not. When a court of equity has considered conflicting evidence and made a finding and decree, it is presumptively correct, and, unless some obvious error of law has intervened, or some serious mistake of fact has been made, the finding and decree should be permitted to stand. Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Coder v. Arts, 152 Fed. 943, 946, 82 C. C. A. 91, 15 L. R. A. (N. S.) 372. In our opinion the Public Ledger Company never became a proprietor of Mr. Gerard's literary work "My Four Years in Germany," in such a sense that it was qualified to protect it, or any right in it, by a copyright obtained by itself: (1) Because no such right or proprietorship was ever transferred to it, but such proprietorship was expressly withheld from it by the written agreements between Gerard and Curtis; and (2) because the word "proprietor" in the statute is equivalent to the word "assign," and the plaintiff never directly or indirectly became an assign of the author in such sense as was requisite to qualify it to obtain a valid copyright.

Let the decree be affirmed.

⚷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes