## MIFFLIN *v.* R. H. WHITE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 268. Argued April 30, May 1, 1903.—Decided June 1, 1903.

The serial publication of an author's work in a magazine with his consent and before any steps are taken to secure a copyright is such a publication as vitiates, under § 4 of the act of 1831, the copyright afterwards attemped to be taken out. *Holmes* v. *Hurst,* 174 U. S. 82. Where there is no evidence that the publishers were the assignees or acted as the agents of the author for the purpose of taking out copyright, the copyright entry of a magazine, made by them under the act of 1831, and under the title of the magazine, will not validate the copyright entry subsequently made under a different title by the author of a portion of the contents of the magazine. And see *Mifflin* v. *Dutton, post,* p. 265.

THIS was a bill in equity by the firm of Houghton, Mifflin & Co., as assignees of the late Oliver Wendell Holmes, against

the R. H. White Company, for a violation of the copyright upon the " Professor at the Breakfast Table." The work was published serially during the year 1859, in the Atlantic Monthly Magazine, at first by Phillips, Sampson & Co., and later by the firm of Ticknor & Fields. The first ten parts were published from January to October, 1859, by Phillips, Sampson & Co. without copyright protection. The remaining two numbers for the months of November and December, 1859, were entered for copyright by Ticknor & Fields, whose copyright purported to cover the entire magazine. After its publication serially had been completed Dr. Holmes published the entire work in one volume, containing a proper notice of copyright.

Upon this state of facts the Circuit Court dismissed the bill, 107 Fed. Rep. 708, and upon appeal to the Circuit Court of Appeals that court affirmed the decree. 112 Fed. Rep. 1004.

*Mr. Samuel J. Elder* and *Mr. Edmund A. Whitman* for appellants.

*Mr. Andrew Gilhooly* for appellee.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

That the copyright taken out by the author after the serial publication of his work in the Atlantic Monthly did not prevent the republication of so much of such serial as had appeared in the magazine prior to December, 1859, and before any steps taken to obtain a copyright, was settled by this court in *Holmes* v. *Hurst*, 174 U. S. 82, wherein we held that the appearance of a work in a magazine, by consent of the author, was such a publication as vitiated the copyright under section four of the copyright act of 1831. 4 Stat. 436.

The question presented by this case is whether entering for copyright the last two parts of the " Professor at the Breakfast Table " in the December number of 1859 of the Atlantic Monthly by Ticknor & Fields, proprietors of the magazine, was sufficient to save the rights of the author, the plaintiff

having purchased such rights from the executor of the late Dr. Holmes.

By section one of the act of February, 1831, " the author or authors of any book or books . . . not printed and published, . . . and the executors, administrators, or *legal assigns* of such person or persons, shall have the sole right and liberty of printing," etc. By section four, " no person shall be entitled to the benefit of this act, unless he shall, *before publication*, deposit a printed copy of the title of such book . . . in the clerk's office of the District Court of the district wherein the author or *proprietor* shall reside," when the clerk is directed to make a record of the same, in a form prescribed, wherein is stated the date, the name of the author or proprietor, etc.; and by section five, the person entitled to the benefit of the act shall give information of his copyright, by giving notice on the title page, or page immediately following, in a prescribed form. Construing these statutes together, it would seem that the word " proprietor," in the fourth section, must practically have the same meaning as " legal assigns " in the first section, and was designed to give to the legal assignee of any author or authors the right to take out the copyright in his own name.

There is no evidence in this case, however, that Dr. Holmes, the author of the " Professor at the Breakfast Table," ever assigned to either of the proprietors of the magazine the authority to copyright his work. While there is an allegation in the bill, upon information and belief, that the work—the first ten parts of which were published by Phillips, Sampson & Co.—was printed, published and sold by said Phillips, Sampson & Co. " by and with the consent and authority of the said Oliver Wendell Holmes, and in accordance with an agreement " made with him by the said firm, whereby he granted to them the right to print, publish and sell his work in the said magazine, there is no allegation that either Phillips, Sampson & Co. or their successors, Ticknor & Fields, were authorized to enter " The Professor at the Breakfast Table " for copyright, either in their own names, or in the name of the author; nor does there appear to be any connection whatever between the copyright taken out by Ticknor & Fields and that subsequently taken out by Dr. Holmes.

The entry of the Atlantic Monthly by Ticknor & Fields was evidently not intended for the protection of the author of each article therein appearing, but for their own protection, and to prevent the republication of the December number of the Atlantic Monthly. While, without further explanation, it might, perhaps, be inferred that the author of a book who places it in the hands of publishers for publication, might be presumed to intend to authorize them to obtain a copyright in their own names, *Pulte* v. *Derby*, 5 McLean, 328 ; *Belford* v. *Scribner*, 144 U. S. 488, 504, it is apparent that there was no such intention in this case, inasmuch as almost immediately after the publication of the December number of the magazine, Dr. Holmes himself entered the book under its correct title for copyright. That right was never assigned until 1895, when it was turned over to the plaintiffs by the executor of the author. Had the copyright been entered by Ticknor & Fields, as agents of Dr. Holmes, it is possible it might have been sustained, but there is nothing to indicate that Ticknor & Fields were acting for any one else than themselves; and there is nothing to show that Dr. Holmes ever assented to their copyrighting his work. It is impossible to see how the copyright subsequently obtained by Dr. Holmes can derive any additional support from the fact that Ticknor & Fields chose to copyright the final chapters of the work in the Atlantic Monthly, since there is nothing to indicate that he even knew that any such proceeding was contemplated, much less that he authorized it.

But, even assuming that it was done by his authority, there is an additional question whether the entry of a book called the "Atlantic Monthly Magazine," in the name of Ticknor & Fields, is equivalent to entering a book called "The Professor at the Breakfast Table," by Oliver Wendell Holmes. The two entries were in the following form :

1. Entry of "the Atlantic Monthly" for the month of December, 1859. "Entered according to act of Congress in the year 1859, by Ticknor & Fields, in the clerk's office of the District Court of the District of Massachusetts."

2. Entry of "The Professor at the Breakfast Table." "Entered according to act of Congress in the year 1859, by Oliver

Wendell Holmes, in the clerk's office of the District Court of the District of Massachusetts."

The object of the notice being to warn the public against the republication of a certain book by a certain author or proprietor, it is difficult to see how a person reading these notices would understand that they were intended for the protection of the same work. On their face they would seem to be designed for entirely different purposes. While owing to the great reputation of the work and the fame of its author, we might infer in this particular case that no publisher was actually led to believe that the book copyrighted by Dr. Holmes was not the same work which had appeared in the Atlantic Monthly, that would be an unsafe criterion to apply to a work of less celebrity. It might well be that a book not copyrighted or insufficiently copyrighted by the author might be republished by another in total ignorance of the fact that it had previously appeared serially in a copyrighted magazine. It is incorrect to say that any form of notice is good which calls attention to the person of whom inquiry can be made and information obtained, since the right being purely statutory, the public may justly demand that the person claiming a monopoly of publication shall pursue, in substance at least, the statutory method of securing it. *Thompson* v. *Hubbard*, 131 U. S, 123. In determining whether a notice of copyright is misleading we are not bound to look beyond the face of the notice, and inquire whether under the facts of the particular case, it is reasonable to suppose an intelligent person could actually have been misled.

With the utmost desire to give a construction to the statute most liberal to the author, we find it impossible to say that the entry of a book under one title by the publishers can validate the entry of another book of a different title by another person.

The decree of the Court of Appeals was correct, and it is therefore

*Affirmed.*