FORD v. CHARLES E. BLANEY AMUSEMENT CO. et al.

(Circuit Court, S. D. New York. November 5, 1906.)

1. COPYRIGHT—CONSTRUCTION OF STATUTE.

The copyright act should be liberally construed, with a view to protect the just rights of authors and to encourage literature and art.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Copyrights, § 1.]

**2. SAME—REQUISITES—MAGAZINE ARTICLE.**

    The proprietor of a magazine, who is also the owner of an article published in it, secures a valid copyright of such article by duly copyrighting the number of the magazine in which it is printed.

**3. SAME—RIGHT OF DRAMATIZATION.**

    Under Rev. St. § 4952 [U. S. Comp. St. 1901, p. 3406], providing that "authors or their assigns shall have exclusive right to dramatize or translate any of their works for which copyright shall have been obtained under the laws of the United States," it is not necessary that an author should himself have taken out a copyright of his book in order to preserve the right of dramatizing it, but it is sufficient if a copyright has been secured by any one having the right to obtain it, and the author may reserve the right of dramatization while selling the right to publish the book to another, who, as proprietor, may copyright it in his own name.

**4. SAME—ACTION FOR INFRINGEMENT—PLEADING.**

    In an action for infringement of a copyright, it is not sufficient to allege generally in the bill or complaint that all conditions and requisites required by the laws of the United States to obtain a copyright have been complied with, but the specific acts done and necessary to constitute such compliance with the law must be affirmatively alleged, and the complaint must also show that the person in whose name the copyright was obtained was the person who owned the right and was entitled to it.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Copyrights, § 72.]

At Law. On demurrer to complaint.

Elder & Roehr (Robert H. Elder and Ralph Royall, of counsel), for plaintiff.

Mayer C. Goldman, for defendants.

HOLT, District Judge. This is a demurrer to a complaint on the ground that it does not state facts sufficient to constitute a cause of action. The action is brought to recover damages for an alleged violation by the defendants of the complainant's right of dramatization of a novelette. The complaint alleges, in substance, that the complainant is the author of a novelette called "Cherub Divine"; that the complainant sold to the Ainslee Magazine Company of New York the sole right of printing and publishing the said novelette, reserving to the complainant all rights of dramatization of it; that the Ainslee Magazine Company, as agent, for and in behalf of and for the purpose of protecting the rights of the complainant in the said novelette, deposited in the office of the Librarian of Congress on January 16, 1905, the title of their monthly publication, as follows: "Ainslee's Volume 15, No. 1, February, 1905," which said publication contained the said novelette; that said Ainslee Magazine Company thereafter duly took the various proceedings necessary to obtain a copyright of said Ainslee's volume 15, No. 1, February, 1905; that the defendants, in violation of the complainant's right of dramatization of the said novelette, had composed and prepared for stage production a dramatization of the said novelette in a play called the "Millionaire Detective"; that said play has been performed in various cities; and that the defendants are about to produce said play in other cities, and a judgment for damages is demanded in the sum of $15,000.

There are two important questions raised by this demurrer. One is whether the proprietor of a magazine, who becomes the proprietor of an

article published in it, copyrights the article by filing in the office of the Librarian of Congress the title page of the magazine and by otherwise complying with the provisions of the copyright act. There is not much authority upon that question. It has been suggested that, in order to secure a copyright of an article published with other articles in a periodical, it is not enough to deliver at the office of the Librarian of Congress a printed copy of the title of the periodical, and to publish the copyright notice required by the statute on the title page or the next page of the periodical; but it is claimed that a copy of the title of each article, in respect to which copyright is claimed, must be filed, and a copyright notice inserted at the head of each article. But I think such a construction too strict. The copyright act, in my opinion, should be liberally construed, with a view to protect the just rights of authors, and to encourage literature and art. I think that the filing of the title of a magazine is sufficient to secure a copyright of the articles in it, if they are written or owned by the proprietor of the magazine. Bennett v. Boston Traveller Co., 101 Fed. 445, 41 C. C. A. 445. I cannot see how there can be any question of the validity of such a proceeding if the proprietor of the magazine is the author or the proprietor of all the articles published in it; and if he is the author or proprietor of some of the articles, and not of others, I do not see why a copyright so registered is not valid as to the articles which he either wrote or owns. I think, therefore, that a valid copyright was obtained of the novelette Cherub Divine by filing in the office of the Librarian at Washington the title page of the issue of Ainslee's Magazine in which it was published, provided, of course, all other legal requirements were complied with.

The other serious question raised by this demurrer is whether the right of dramatizing a novel can be reserved by its author when the sole right to print it has been sold to a publisher who, as proprietor, has taken out the copyright. The language of section 4952 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 3406], as amended, is:

"Authors or their assigns shall have exclusive right to dramatize or translate any of their works, for which copyright shall have been obtained under the laws of the United States."

I think, under this provision, it is not necessary that the author himself should have taken out the copyright of a book, in order to preserve the right of dramatizing it, but that the author can sell the copyright of the book to a person who, as proprietor, can take out the copyright, while the author, at the same time, retains the right of dramatization. If a copyright of a book has been obtained by anybody entitled by the law to obtain it, I think that the author of the book or his assigns, a term which, as used in section 4952, means, in my opinion, an assignee of the right of dramatization, has the exclusive right to dramatize the work, if he reserved the right to dramatize upon the sale of the book, which is alleged in the complaint in this case. The object of the statute seems to have been to provide that the author's right of dramatization of a book shall not be protected unless the book be copyrighted; but I do not see anything in the statute which requires that the author

should take out the copyright of the book. The act does not say that authors or their assigns shall have the exclusive right to dramatize a book for which they have obtained a copyright. It says that they shall have such exclusive right if copyright "shall have been obtained." The copyright of a book and the right of dramatization are inherently and essentially different. They are, in most cases, exercised or purchased by different persons, and I can see no reason why the copyright of a book, which, by the statute, is a prerequisite to the maintenance of the exclusive right of its dramatization, should necessarily be obtained by the person who holds the right of dramatization. If it is obtained by anybody entitled to it, in my opinion the requirement of the statute is complied with.

There are, however, certain other grounds of demurrer to the complaint in this case, which I assume can probably be easily cured by amendments, but which I think I am compelled to hold to be well taken. The complaint in an action of this kind must allege affirmatively that the title of the book has been filed in the office of the Librarian of Congress at Washington, that two copies of the book have been filed in such office before its publication, and that notice of the copyright, as required by the act, has been printed upon each copy issued. The bill in this case does not contain these specific allegations, although it does contain an allegation that all conditions and requisites to obtain a copyright, as required by the laws of the United States, were complied with. I think, under the authorities, that the specific allegations to which I have referred should be contained affirmatively in the bill. Trow City Directory Co. v. Curtin (C. C.) 36 Fed. 829; Chicago Music Co. v. Butler Co. (C. C.) 19 Fed. 758. There is also in this bill strictly no allegation of the transfer of the copyright to the Ainslee Magazine Company. The allegation is that the complainant sold to that company the sole right of printing and publishing the said novelette, reserving to the complainant all rights of dramatization of the said novelette. This probably may be held to imply a sale of the copyright, although a mere contract authorizing the publication of a story in a magazine does not (Mifflin v. R. H. White Co., 190 U. S. 260, 23 Sup. Ct. 769, 47 L. Ed. 1040); but I think that there should be a specific allegation in the complaint that the copyright was sold or transferred as well as the right to print.

I think, therefore, that this demurrer should be sustained, with leave to the complainant to amend the complaint within 20 days, upon the payment of costs.