## McDANIEL v. FRIEDMAN.
### No. 6353.

Circuit Court of Appeals, Seventh Circuit.
July 29, 1938.

Russell Wiles, Marcus A. Hirschl, Charles J. Merriam, William B. Graham, and George A. Chritton, all of Chicago, Ill. (Chritton, Wiles, Davies, Hirschl & Dawson, of Chicago, Ill., of counsel), for appellant.

Albert F. Mecklenburger, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

Appellee was charged with infringement of United States Patent to appellant, No. 2,002,245. It was issued May 21, 1935, upon an application filed November 10, 1932. The bill also charged appellee with infringement of a copyright on appellant's book, "A New Technique and Instrumentation for the Removal of Impacted Teeth." The date of publication was September 27, 1933, and the affidavit upon which the entry of claim was registered was received January 15, 1934. The substance of this book was also published in "Dental Cosmos" on July 26, 1933, and a claim for copyright upon it was likewise registered in August 1933. The defenses were invalidity and non-infringement. The court made special findings of fact, and concluded that the copyright and all of the patent claims were invalid and not infringed. From the de-.

cree, which followed the conclusions, this appeal is prosecuted.

The invention relates to an instrument for use in removing an impacted third molar tooth. Prior to this disclosure it is said that it was customary in removing such a tooth to cut away that part of the jawbone growing above the tooth by means of a chisellike instrument adapted to cut downwardly through the jawbone by pushing downwardly on the instrument with hand pressure, or by striking the instrument with a mallet, or by drilling. This was objectionable in that the instrument had to cut first through the hard outside portion of the bone before it reached its softer or inside portion, thus necessitating a much more difficult operation, causing considerable trauma, shock to the nervous system, and much pain to the patient.

It is claimed that the present invention overcame these difficulties with a tool provided with a lateral cutting edge, shaped with a pointed end, a rearwardly increasing cross-section, and a rounded back, so that its pointed end may be inserted between the impacted tooth and the jawbone. Thus, by a rotating or rocking movement of the tool and a slight forward pressure, it may be manipulated so that the cutting edge operates for cutting the bone back of the third molar, or cutting away the hard bony structure overlapping the impacted tooth, or cutting the dense bony structure in the retra-molar triangle. It is said that this instrument is not an elevator for prying loose a tooth or a portion of it, but is a bone-cutting tool which embodies a new technique in that it cuts from below with a rotating and undermining cut, starting in the soft bony structure which underlies the harder bony structure in the retra-molar triangle. It is further stated that there is always a point of entry back of the second molar where the soft bony structure can be reached and cut away by the insertion and operation of the tool, and when the harder portion of the bone is reached in the upward cutting, it may be cut away with much greater facility and less pain to the patient than with the old tools known to the art.

The first six claims, of which number one is typical,[1] are instrument claims. They are limited in respect to the blade by the following characteristics: (1) A pointed end; (2) a thickened curved or rounded rear edge; (3) a transversely convex bottom face; (4) a transversely concave top face; (5) top and bottom faces meeting on one side to form a thin cutting edge; (6) the axis of the cutting edge lies at an angle to the axis of the thickened rounded rear edge.

The last four claims are method claims, of which number seven is typical,[2] and purport to state a method "of preparing an impacted tooth for extraction."

The District Court held the instrument claims invalid over the following prior art: The boy scout knife, the Le Cluse elevator, and the instruments of Doctors Feldman, Winter, Cook and Parker. It held that while the boy scout knife, with its thickened curved rear edge, was not a dental instrument, it was a reamer or corer, and that it was not invention to employ its equivalent, both in principle and construction, as a dental instrument for coring or reaming bone.

The LeCluse elevator has a blade with a sharp point, a convex bottom face, and a flat top face, meeting to form two longitudinal curved edges. The Winter instrument, which has many variations, is a modification of LeCluse, having a concave top face which meets the convex bottom face at a more acute angle to form sharper edges. The Cook instrument has a sharp, pointed end, a convex bottom face, and a concave top face, which faces meet to form two sharp cutting edges. The Parker instrument, also, is

[1] "1. A dental instrument for cutting away the jaw-bone from an impacted tooth comprising a handle portion and a blade portion, said blade portion having a pointed end and a thickened curved rear edge, a transversely convex bottom face and a transversely concaved top face, said top and bottom faces meeting to provide a thin front cutting edge, the axis of which lies at an angle to the axis of said thickened rear edge, whereby the convexed lower face and the thickened rear edge provide bearing portions for the blade in such manner as to rotatively support it upon the jaw-bone during the operations of said cutting edge."

[2] "7. The method of preparing an impacted tooth for extraction which consists in cutting away portions of the jaw bone adjacent to the impacted tooth by undermining rotational cuts which are continued until sufficient jaw bone has been removed from around the tooth to permit lifting and extraction of said tooth."

characterized by a convex bottom face and a concave top face which meet to form two cutting edges adjacent to the point, and two longitudinal edges. The cutting edges near the point have bevelled lower faces. The longitudinal cutting edges may be sharpened, and were kept sharp on those used by Dr. Parker as early as 1925.

The instruments of Feldman, Winter, Cook and Parker were designed and used for the removal of bone over impacted teeth. All of the elements of the instrument claims are old in the dental art, except the limitation found in all those claims to a longitudinally disposed thickened, rounded rear edge. This limitation is well illustrated by cross sections of the instruments involved. Those of Winter, Cook and Parker, as well as those of appellee, disclose the shape of a crescent, while those transversely through the blade of the patent show one sharp edge and an opposite rounded edge with a substantial thickness, varying in the different drawings, none of which have the appearance of a crescent.

Since 1924 appellee has manufactured and sold what are known as Feldman elevators, 64 R and 64 L. They were designed by Dr. Feldman in 1923, and were a modification of the LeCluse elevators. This modification consisted in hollowing the upper surface, sharpening the edges, and twisting the concavity into a longitudinal spiral. This instrument of Feldman was the only instrument ever manufactured by appellee which bore the stamp 64 R or 64 L, the letters signifying right and left. These were sold to the public in and since 1929, and have been used since that time by the designer.

The alleged infringing instruments are common augers or reamers. They comprise a helical groove about a pointed shaft, and they differ from Feldman merely in the gauge of the screw, that is to say, in the number of turns which the helical groove makes about the shaft in a given space. The patent contains no limitations as to the degree of twist of the groove. All of the dental instruments cited as prior art were in existence and used in connection with the removal of impacted teeth for more than two years before the date of the patent application.

The District Court found that the difference as to efficiency, if any, between the patented instrument and the other dental instruments cited was a difference in degree and not in kind; that it was due to the varied conditions presented by different impactions, as well as the varying skill of the operator, and not to the form of the blade. It further found that appellant's adaptation of the thickened curved rear edge of the boy scout knife to a dental instrument was merely the use of a well-known tool for its inherent purpose, and involved only mechanical skill. We think the court's findings with respect to the instrument claims are sound and are supported by the weight of the evidence.

With respect to the method claims, numbered 7 to 10, the court found that they involve merely the inherent function of the instrument; that they do not claim a method, but set forth only a result without specifying the procedure to be followed in reaching that result. It is worthy of note that appellant's expert witness, Dr. Long, testified on cross-examination that the technique was the natural result of the use, and was the function of the instrument. Appellant, however, contends that the Doctor was tricked into giving this answer, and used a form of words, the legal sense of which he did not understand. The record does not indicate that the witness was tricked in any manner, or that he did not understand the language used, nor was the court's attention called to any misunderstanding of the witness, or to the form of the questions. It was further found that the removal of bone overlying an impacted tooth, by use of hand pressure bone-cutting tools was old in the art, and that the utilization of the peridental space, or the encapsulated area, as the point of entry was old long before appellant's disclosure; that all of the operative procedure disclosed was publicly used and demonstrated by Doctors Cook and Parker, and fully described by Dr. Berger, more than two years prior to appellant's application. We think these findings are fairly supported by the weight of the evidence, and are not inconsistent with the ruling in Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S.Ct. 652, 53 L.Ed. 1034.

Appellant contends, however, that his process or method is not to be limited to a descriptive use of his instrument, but rather that it consists in removing bone by cutting outwardly from below, so

as to remove more easily the hard exterior shell of the alveolar process. He says that although this process requires the use of the special tool which he has invented as described in his claims 1 to 6 inclusive, his process or method is the removing of the bone by cutting it outwardly from below. Hence he argues that this amounts to an inventive process or method, apart from the disclosure of his instrument. There is no doubt that a process and an apparatus by which it is performed are distinct things. They may be found in one patent, or they may be the subject of different patents. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805. A method of doing a thing which is so clearly indicated that those skilled in the art can avail themselves of mechanisms to carry it into operation can be the subject matter of a patent, but a mere function or effect of the operation of an instrument can not be. Cochrane v. Deener, 94 U.S. 780, 24 L.Ed. 139; Expanded Metal Co. v. Bradford, supra. In order to have a patentable method, however, it must be a new method. It may be accomplished by the use of new or old instruments, and the result may be new or old, but the method must be new. Here we have what we conceive to be an old instrument, an old result, and, aside from the unpatentable dexterity of the operator, we have an old method. It can not be said that cutting the alveolar process outwardly from within requires the use of appellant's patented instrument and none other. To so hold would be to contradict the prior art, and render those who practice it amenable to damages for infringement. This is not warranted by the evidence.

Appellant stresses the fact that his instrument is a borer, and should not be confused or compared with the instruments of the prior art which have always been referred to as elevators. Neither name accurately describes all the uses to which either instrument may be and is put, in relation to the extraction of impacted teeth. To say that the elevators of the prior art were never used in the art for anything but elevation is contrary to the disclosures of this record. The elevators of Feldman did everything in the way of boring that is now claimed for the patent, and the difference in name is not sufficient to destroy the effectiveness of the former as a prior disclosure. We are convinced that the court rightly held the method claims invalid in view of the prior art and disclosures.

The court found that the subject matter of appellant's two copyrighted works was substantially reproduced in an article subsequently written by him and published with his consent in the December 1933 issue of the Dental Digest, a magazine of wide circulation. This publication bore no notice of appellant's copyright; there was no evidence to show that appellee saw or had access to either of the copyrighted publications; appellee described to Dr. Soffel in 1929 the same technique which he subsequently described in his accused publication; the words and phrases set out by appellant in his answers to interrogatories are all contained in the Dental Digest article, as well as in the copyrighted publications; those differences in root and pulp chamber size, shape, and formation which were pointed out by appellant to distinguish the illustrations in his copyrighted publication from others shown him are likewise found to exist in comparing the copyrighted illustrations with the diagrammatic drawings in appellee's publication. The angularity of the impacted tooth in each of the copyrighted illustrations is typical of impactions of its class, the classification being based on that angularity; that similarity in this respect was not proof of copying. The court further found there was no proof that appellee ever copied from appellant's copyrighted works, and that any inference to the contrary from similarity would apply as well to the uncopyrighted publication in the Dental Digest.

A perusal of this record convinces us that the court's findings and conclusions with respect to the copyrights are supported by the weight of the evidence. Mifflin Cases, Mifflin v. R. H. White Co., 190 U.S. 260, 23 S.Ct. 769, 47 L.Ed. 1040, and Mifflin v. Dutton, 190 U.S. 265, 23 S.Ct. 771, 47 L.Ed. 1043. It is quite true that section 20 of the Copyright Act, 17 U.S.C.A. § 20, provides that accidental omissions of copyright notice do not affect a previously acquired copyright except as to a person misled thereby. However, this record does not disclose that the omission here was accidental. On the contrary the disclosure, without notice of appellant's copyright, was published in one of the leading dental publications of America, which had an extensive circulation

among the dental profession generally. It is urged by appellant that the Dental Digest copyrighted the published article. Be that as it may, that company is making no complaint here, and its action can not inure to appellant's benefit for the purpose of supplying his omission.

Decree affirmed.