### BORDEN et al. v. GENERAL MOTORS CORPORATION et al.

District Court, S. D. New York.
June 21, 1939.

Groggins & Vernoff, of New York City (Stanley S. Groggins, of New York City, of counsel), for plaintiffs.

John Thomas Smith, of New York City, for defendant General Motors Corp.

Henry M. Hogan, of New York City (George A. Brooks, of New York City, of counsel), for defendant General Motors Sales Corp.

Morris J. Junger, of New York City, for defendant Jam Handy Picture Service, Inc.

GALSTON, District Judge.

Plaintiffs bring this action against the defendants for the alleged infringement of

a copyright of a book entitled "How to Win a Sales Argument". The infringement is alleged to consist in the production and exhibition by the defendants of a motion picture entitled "Smooth Sale-ing". It is contended that the motion picture embodies the teaching of the authors of certain principles of thought stated substantially in the same language and order set forth in their book.

The book comprises a foreword; Part I, a statement of principles; Part II, illustrations of the principles; and Part III, exercises in analysis. The claim of infringement is restricted to Part I and page 166 of the book, wherein are set forth six so-called principles of persuasion, which may be enumerated as follows in the order in which they appear in the book:

(1) Don't try to do all the talking yourself!

(2) Don't interrupt your opponent!

(3) Avoid an argumentative attitude that is belligerently positive!

(4) In the first half of an argument inquire rather than attack!

(5) Restate clearly and fairly in your own words the gist of each argument your opponent advances—as soon as he advances it!

(6) Identify your main argumentative attack with one key issue. Then stick to that issue. Don't digress!

The plaintiffs' theory is that the copyright of the book entitles them to the dramatic rights of reproduction of these principles.

The book itself in a series of dialogues illustrates how the principles can be carried into practice; but the plaintiffs do not allege that the challenged motion picture of the defendants is in any respect an infringement of that part of the copyrighted book.

The accused film may be summarized as picturing a Chevrolet car, a sales room, three salesmen, much dialogue and some "prospects". The salesmen discuss their deliveries for the month. One of them is led to say that when he talks to a prospect, "I do the talking. * * * I don't give him a chance to think up any objections." Miller then illustrates how he spoke to his last prospect but he fails to get the order for the car. Then Roberts, the second salesman, says: "Well, in the first place I don't do all the talking. I make the prospect talk. * * * The first thing I

do is let them voice their objections." Then Roberts illustrates how he would approach a customer in the effort to sell him a Chevrolet car. But Roberts does not close the sale either. Then the third salesman, Allen, illustrates his method and says to the other two:

"As I understand it your objection to listening is that you are afraid you might not get across your entire story * * *.

"And you like to let the prospect talk, so that you can argue the various points with him * * *.

"* * * my first principle is 'Don't do all the talking.' * * * my second selling principle is 'Don't interrupt.' * * * my next point—'Don't argue.' My next point 'Ask first. Answer afterwards.' * * * You see my next point is 'Repeat every objection.' "

The discussion continues and then Allen says, in response to a request from Roberts, after protesting that he has talked long enough, "Well—I suppose we all do this one—'Concentrate on the main objection'—answer it to the prospect's satisfaction and ask for the order."

Then the scene shifts to the arrival of a prospect and the making of a wager between Roberts and Miller with Allen that Allen will not be able to sell Jennings a car. The film goes on to show by picture and dialogue how Allen succeeds in his effort, using as one of his selling points the trade-in value of the car that Jennings had, and the picture concludes with a statement by Allen of: "Don't do all the talking. Don't interrupt. Don't argue. Ask first. Answer afterwards. Repeat every objection. Concentrate on the key objection. Know your product and your market. Ask for the order."

Though there is similarity there is no identity in Allen's summary in the film with the six principles shown on page 166 of the book. Certain employees of the Chevrolet Motor Company and of the General Motor Sales Corporation were present at a lecture delivered by the plaintiffs in 1931, entitled "How to Win a Sales Argument" at a convention of the Pennsylvania Automotive Association. In October 1935 an article appeared in the Detroit News of which Albert Edward Wiggam appeared to be the author, entitled "How to Win an Argument". One of the officials of the General Motors Corporation obtained permission to publish the article and this was distributed among sales agents of the Chev-

332

rolet Motor Company, a corporation controlled by the General Motors Corporation. The scenario of the film was prepared by the Jam Handy Picture Service, Inc., one of the defendants, at the request of Holm, an assistant manager of the retail selling department of the Chevrolet Motor Company. The picture was completed and sent to the Chevrolet's own offices on or about February 5, 1936. It nowhere appears in the record that anyone connected with any of the three defendants had access to the copyrighted book and, as has been indicated, there is a variation in terminology, though perhaps not in meaning, between the first six of Allen's admonitions and the six "principles" of the copyrighted book. The book was first published under the title "How to Win an Argument" and that title in the second edition was changed to "How to Win a Sales Argument". Indeed it does not seem that the book originally was intended primarily for the use of salesmen. As Professor Busse said at the trial: "In fact the sales angle crept in later on." In the foreword the following passage appears: "To business men particularly—executives as well as salesmen— we dedicate this book, from the conviction that in the business conference room, more than any other place, there is pressing need for greater efficiency in argumentative technique. * * *"

On the other hand the defendant's "Smooth Sale-ing" has no other purpose than to educate salesmen in correct methods of engaging prospects. Of course, to prove infringement there need not be found a complete or exact copy. Paraphrasing or copying with evasion is an infringement. Nutt v. National Institute, Inc. For The Improvement Of Memory, 2 Cir., 31 F.2d 236. But the plaintiff's six principles of persuasion tell no story, unfold no plot, provide no dramatis personae. So far as it is possible to find a theme in the statement of principles of the copyrighted book the most that can be said is that they set forth certain rules of persuasion. These rules in varying language, though perhaps in the same order, are used by the defendants in the development of their theme relating to the sale of a Chevrolet automobile; and the theme is restricted by the defendants to an audience of salesmen of Chevrolet automobiles. The defendants make no effort to develop correct principles in the discussion of a general debate, but do restrict the matter entirely to the sale of a particular product.

Assuming though that the defendant's film was produced after a showing of access to the copyrighted work, and that there was an appropriation in substantially similar phrase in the exact order of the six principles recited, does the copyright of the book extend to the dramatization shown in the film? A set of rules is not a dramatic theme. Whist Club v. Foster, D.C., 42 F.2d 782. Seltzer v. Sunbrock, D.C., 22 F.Supp. 621. In this latter case it appeared that the copyright covered two copyrighted books or dramatic compositions describing a roller skating race. The court found no "distinctive treatment of a theme". The necessity for a theme as an essential part of a dramatic composition was pointed out.

Fundamentally, however, it is difficult to understand how a monopoly right may be secured sufficiently broad to prohibit others from reproducing in all forms, and particularly in a dramatic embodiment, abstract rules such as those hereinbefore outlined. If such a contention were sustainable no codes of conduct, religious, ethical or mental, could be reproduced in any form without the consent of the authors. It is the inherent assumption of the plaintiffs that because the copyright statute confers upon the holder of a certificate of copyright registration of a literary work, any dramatic reproduction thereof is an infringement of his rights. Broadly speaking that may be conceded. The difficulty with the view is that not all copyrightable literary or pseudo-literary productions are susceptible of dramatic reproduction. Take for instance a book of statistics or of maps or charts. What dramatic rights attach? How can the laws of the syllogism or the canons of inductive method in and of themselves denote a dramatic exhibition? If it were conceded that the postulates, axioms and theorems of geometry in some distinctive arrangement could be copyrighted as a literary work, what dramatic rights do they carry? The six admonitions of the author in respect to persuasion fall within the same limitation. They express at most general thoughts— not one of them new or original. They express certain observations of the practical psychologist. As general principles or ideas or thoughts in themselves they are not the subject of valid copyright. The most that can be claimed to sustain a copyright would be the words and their order.

See Chautauqua School of Nursing v. National School of Nursing, 2 Cir., 238 F.

151, 152. In that case it appeared that the complainant published and copyrighted a lecture entitled "Remedies. The Methods by Which They Are Administered". Some twelve pages were devoted to hypodermic medication in successive steps which the text described and explained. There were also cuts of forms of syringes with directions of how to use them and the drugs and doses to be administered. They included also photographs of a person actually performing the operation of administering the hypodermic injection. Judge Ward remarked: "Of course, all previous medical knowledge was common property to any writer. There is in neither lecture any exercise of the imagination or any original investigation. But the complainant alleges that, though it originated nothing new, it was the first to treat separately the successive steps in the operation as generally practiced and to illustrate each pictorially. * * * We do not understand such a plan of instruction to be copyrightable. It is a startling proposition to say that the complainant has secured the monopoly for 28 years of stating in separate categories and illustrating pictorially the successive steps of this very well known operation."

In Dymow v. Bolton et al., 2 Cir., 11 F. 2d 690, 691, Judge Hough quoted from Eggers v. Sun Sales Corporation et al., 2 Cir., 263 F. 373, and pointed out that the protection of the copyright statute extends to "all the copyrightable component parts of the work copyrighted". He concludes with the observation that that phrase "presupposes that there may be much in what is popularly called a copyrighted book as to which the statute affords no protection," adding "The same case shows that infringement is not a statutory phrase, but that by repeated decisions infringement of copyright is judicially held to consist in the copying of some substantial and material part of that as to which the statute affords protection. Cf. Wilson v. Haber Bros. [2 Cir.], 275 F. 346."

Thus it is insisted that the inquiry must always be directed to ascertain whether that which has been appropriated is copyrightable matter. Ideas as such are not protected. Holmes v. Hurst, 174 U.S. 82, 19 S.Ct. 606, 43 L.Ed. 904; Kalem Co. v. Harper Bros., 222 U.S. 55, 32 S.Ct. 20, 56 L.Ed. 92, Ann.Cas.1913A, 1285. In Nichols v. Universal Pictures Corporation, 2 Cir., 45 F.2d 119, 121, the plaintiff had secured copyright of her play "Abie's Irish Rose". The defendant produced a motion picture play, "The Cohens and The Kellys" which was claimed to be an infringement. Judge Learned Hand remarked: "There is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his 'ideas,' to which, apart from their expression, his property is never extended."

Again: "If Twelfth Night were copyrighted, it is quite possible that a second comer might so closely imitate Sir Toby Belch or Malvolio as to infringe, but it would not be enough that for one of his characters he cast a riotous knight who kept wassail to the discomfort of the household * * *. These would be no more than Shakespeare's 'ideas' in the play, as little capable of monopoly as Einstein's Doctrine of Relativity or.Darwin's theory of the Origin of Species."

I conclude that there is no infringement of copyrightable subject matter.

Finally it must be observed that plaintiffs' proof discloses that their book was copyrighted not by themselves but by Harper & Bros.; and that the copyright was obtained under an agreement between the plaintiffs and Harper & Bros. wherein the authors assigned all their rights of publication, translation, abridgment, selection and "all other rights therein", including the exclusive right to take out copyright in their own name. The book originally was copyrighted under the name "How to Win an Argument". So far as the record discloses it was never copyrighted under the title "How to Win a Sales Argument". Sec. 25 of Title 17, U.S.C., 17 U.S.C.A. § 25, provides that if any person shall infringe the copyright such person shall be liable to the copyright proprietor. The plaintiffs claim the dramatic rights referred to in Sec. 1, subdivision (b) of Title 17, U.S.C., 17 U.S.C.A. § 1(b), which in part provides that any person entitled thereto upon complying with the provisions of the title shall have the exclusive right to dramatize the copyrighted book if it be a nondramatic work.

The difficulty with the plaintiffs' position is they are not the copyright proprietors for they assigned without reservation their right to publish their book and "all other rights therein". In Dam v. Kirk La Shelle Co., 2 Cir., 175 F. 902, 904, 41 L.R.A.,N.S., 1002, 20 Ann.Cas. 1173, it was

said: "The courts cannot read words of limitation into a transfer which the parties do not choose to use." See also New Fiction Publishing Co. v. Star Co., D.C., 220 F. 994; Atlantic Monthly Co. v. Post Publishing Co., D.C., 27 F.2d 556. There is no doubt that if the copyrighted book has any inherent dramatic possibilities, such dramatic rights as inured passed to Harper & Bros.

In Goldwyn Pictures Corporation v. Howells Sales Co., 2 Cir., 282 F. 9, 11, the converse is found equally true. It was said, in construing Secs. 25 and 36 of the Copyright Act, 17 U.S.C.A. §§ 25, 36, "Nowhere in the statute is there to be found any right conferred upon a licensee or upon an assignee less than the owner of the copyright."

There is no question as to what is meant by "copyright proprietor". "Proprietor" is the equivalent of "assign" and must trace his title from the author. Quinn-Brown Pub. Corporation v. Chilton Co., D.C., 15 F.Supp. 213, and Mifflin v. R. H. White Co., 190 U.S. 260, 23 S.Ct. 769, 47 L.Ed. 1040.

The importance of these principles was doubtless fully appreciated by the plaintiffs for in the amended complaint they allege the sale on July 30, 1926 of the book "How to Win an Argument" to Harper & Bros., together with the right to secure copyright therein, "reserving, however, unto the said Richard C. Borden and Alvin C. Busse the sole right therein to dramatize the said work and to make a motion picture photoplay with or without sound track therefrom". This allegation was denied by the defendants. No proof was given at the trial in support of the allegation. Failure to adduce such proof was fatal to the plaintiffs' case. The plaintiffs seek to avail themselves of Rule 36 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, relying on their notice to admit the foregoing allegations. It is stated that the defendant did not within ten days after the service of that notice serve any statement pursuant to Rule 36.

The Rules of Civil Procedure controlled only proceedings in law and equity. Rule 81 states that they do not apply to proceedings in copyright under the Act of March 4, 1909, as amended, U.S.Code, Title 17, Sec. 25, 17 U.S.C.A. § 25, "except in so far as they may be made applicable thereto by rules promulgated by the Supreme Court of the United States". It

was only on June 5, 1939 that the Supreme Court amended Copyright Rule 1, 17 U.S.C.A. following section 25, to bring such proceedings within the Rules of Civil Procedure.

Failure, therefore, to sustain the allegation of reservation of rights is fatal to the plaintiffs' cause of action. See also Buck v. Kloeppel, D.C., 10 F.Supp. 345.

Accordingly the complaint will be dismissed.