Sadie KLASMER, individually and as administratrix of the estate of Benjamin Klasmer, deceased, and Jo Lombardi

v.

BALTIMORE FOOTBALL, INC., a body corporate, The National Brewing Company, a body corporate, et al.

Civ. No. 12491.

United States District Court
D. Maryland.

Dec. 15, 1961.

Alexander R. Martick and J. Wesley Everett, Baltimore, Md., for plaintiffs.

William D. Macmillan and David F. Albright, Baltimore, Md., for Baltimore Football, Inc.

Morton J. Hollander, Baltimore, Md., for The Nat. Brewing Co.

1. At the close of the hearing oral findings of fact were dictated into the record, with some comments on credibility, and leave was granted to file briefs on questions of law. This opinion will state only such facts as are necessary to understand the legal questions which will be discussed. If there is any conflict between the oral findings and this opinion, this opinion will control.

THOMSEN, Chief Judge.

In this action for alleged infringement of copyright the remaining defendants are Baltimore Football, Inc., and the National Brewing Company. The parties have agreed that the court shall first decide the issue of liability, and if that decision is in favor of plaintiffs, evidence as to damages may then be offered. The principal questions underlying the issue of liability deal with ownership of title to the copyright; dedication, abandonment or forfeiture; assignment; limitations, laches and estoppel.

### Facts [1]

The plaintiffs are Sadie Klasmer, individually and as administratrix of the estate of Benjamin Klasmer, deceased, and Jo Lombardi. Lombardi is a musician, and in 1947 was musical director at the Hippodrome Theatre in Baltimore. He went to New York in 1951 and for some years past has been employed in that City. In 1947 Klasmer was the first violin and house contractor at the Hippodrome. He died in Baltimore in 1949 intestate, leaving a widow and three children, including the witness Morton Klasmer, who is an orchestra leader and business man.

Three successive Maryland corporations have fielded professional football teams known as the Baltimore Colts.[2] Each of the corporate organizations has been popularly referred to as the Baltimore Colts and may be said to have done business under that name.

The first Colts corporation took over a franchise in the All-America Conference early in 1947. The name "Colts"

2. First—Baltimore Professional Football, Inc. (All America Conference, 1947); second—Baltimore Colts Football Club, Inc. (All America Conference and National Football League, 1948–1951); third—Baltimore Football, Inc., one of the defendants herein (National Football League, 1953 to date). The corporations will be referred to herein as the first Colts corporation, the second Colts corporation and the third Colts corporation, sometimes collectively as the Colts.

was selected after a public contest. A volunteer marching band was organized, and several people sent in words and music for an "official" Colts song. These offerings were not suitable and Jack Espey, the general manager, consulted his friend Lombardi in June 1947, showed him the songs, and asked Lombardi to "write a number" for the Colts as a favor. Lombardi agreed, consulted Klasmer, who had composed a song or two, and they developed the words and music over a period of several weeks. Tom Dukehart, the publicity manager of the Colts, himself a poetaster, suggested some of the words, and Espey had the inspiration to include a strain from Maryland My Maryland near the end. Klasmer deposited an early version of the song with the copyright office on July 12, 1947, claiming the copyright himself, although stating that he and Lombardi were the authors of the words and music. Certificate of Registration No. E unpub. 84355 was issued to him. The final unpublished version was deposited on July 23, 1947, and Certificate No. E unpub. 86005 was issued to Klasmer and Lombardi.

Although it had been understood by everyone that the song was written primarily for use by the Colts' band, it was understood that it might be played by other bands at Colt games in Baltimore and elsewhere, and no limitation was placed on the use the Colts might make of it, for publicity purposes or otherwise. No question of payment arose until it was suggested that some thousands of copies of the song be printed and sold at the Stadium, at the Colts' office, at music stores, and elsewhere, and that records thereof might be made. It was then agreed between Klasmer, Lombardi and the Colts that the proceeds from the sale of sheet music and records would be split 50-50 between the two men and the Colts corporation. Espey thereupon had the song printed under the title The Baltimore Colts Official Theme Song, stating that the words and music were by Jo Lombardi and Benjamin Klasmer. Each copy of the sheet music bore the following notice: "Copyright 1947 by The Baltimore Colts, Jo Lombardi and Benjamin Klasmer" and the statements "Made in USA" and "All Rights Reserved". Klasmer and Lombardi authorized the publication and sale to the public of the sheet music, without any requirement as to copyright notice. It does not appear that they had specifically authorized the inclusion of The Baltimore Colts in the copyright notice, but they knew about the wording of the notice before any of the sheet music was offered for sale, and I find from conflicting evidence that they made no objection.[3] Although Klasmer and Lombardi knew that the sheet music was being sold to the public and although they had copies thereof, no one deposited in the Copyright Office two copies of the "best edition" of the work, as required by 17 U.S.C.A. § 13, and no copies of any kind were deposited until December 1959.

Meanwhile Lombardi, probably with the aid of Klasmer, had prepared band arrangements for twelve instruments, each written on a separate sheet, and had given them to Espey for reproduction and distribution, without any limitation on their use. These sheets contained no notice of copyright whatever, and were distributed by the Colts not only to the Colts volunteer band, but also to high school and other bands in Baltimore and other cities where the Colts played. None were sold.

The words of the song were printed in the programs sold at the games in 1947 and subsequent years, without any notice of copyright.

The song was played, usually from memory without any sheet music or score, by bands and orchestras at civic functions, club functions, Bar Mitzvahs, dances, at night clubs and elsewhere. Klasmer and Lombardi knew of some, but not all, of these uses and made no objection thereto. The song was played and sung at the Hippodrome Theatre,

---

3. Lombardi testified at one point: "We had gotten the sample and agreed to it".

and Morton Klasmer's orchestra used the song, playing it from memory without any sheet music, and without any license or objection.

Several hundred copies of the sheet music were sold by the first Colts corporation during 1947. No accounting was ever made, because that organization succumbed after the first season. The corporation was hopelessly insolvent, and Klasmer and Lombardi made no effort to collect their share of the proceeds of the sale of the sheet music.

The second Colts corporation took over the franchise in 1948. Robert C. (Jake) Embry was the president. Klasmer and Lombardi naturally wished to realize something from their efforts, and arranged with Bert Claster, the manager of the Hippodrome Theatre, to negotiate with Embry on their behalf. After several conferences an agreement was reached, reduced to writing and signed by Klasmer and Lombardi, under which they sold and assigned to the second Colts corporation all their rights in the song for 500 shares of stock in the corporation.[4] The agreement did not specifically refer to the copyright, and no copy of the agreement was filed with the copyright office. The 500 shares of the stock were issued and delivered in exchange for the assignment.[5]

Thereafter the officers and employees of the second Colts corporation treated the song and the copyright as belonging to the Colts, to do with as they pleased. They continued to sell and give away copies of the sheet music, without any accounting or payment to Lombardi or Klasmer, and neither Lombardi nor Klasmer nor any representative of Klasmer's estate demanded such an accounting. The Colts' band continued to play the song, and the words were printed in the programs, without notice of copyright. When the photostatic copies of the transcriptions for band instruments ran out, new copies were printed in quantity, bearing the notice "Copyright 1947, The Baltimore Colts". These copies were distributed to bands in Baltimore and elsewhere.

During the one year interval (1952) between the operations of the second and third corporations, when there was no Colt team on the field, the volunteer band continued in existence and played the song at carnivals, fairs and elsewhere.

When the third Colts corporation was organized in 1953, it found the music among the physical property which it took over along with the name, the good will, the volunteer marching band, and the rest.[6] Its officers, agents and employees continued to use and distribute the song and the music as the second Colts corporation had done. About 1956 it distributed photostatic copies of the sheet music, which bore the notice "Copyright 1947 by the Baltimore Colts, Benjamin Klasmer and Jo Lombardi", to all the orchestras listed in the yellow pages of the Baltimore telephone directory. Shortly thereafter it had new sheet music printed bearing the notice "Copyright 1947, The Baltimore Colts", omitting the names of Klasmer and Lombardi from the copyright notice but showing them as the authors.

For many years National Brewing Company has sponsored the broadcasts and telecasts of the Colts games. The Colts routinely furnished to the Brewing Company, its advertising agents or the radio and television stations, information with respect to the music to be played by the volunteer and professional bands before, during and after the games. These sheets were carelessly prepared,

---

4. No copy of the agreement was found by anyone, probably because of a fire in the warehouse where the records of the second Colts corporation were stored, but I find that the execution, delivery and contents of the written agreement were sufficiently proved.

5. Klasmer and Lombardi agreed that 50 shares should be issued to Claster for his services to them, so each of them received 225 shares.

6. The stockholders of the second Colts corporation were given notice of the reactivation of the franchise and the team.

but the Colts' song was always included, usually showing Klasmer and Lombardi as the authors of the song and the Baltimore Colts as publishers.

Over the years the song has been used on many radio and television programs sponsored by various industrial, commercial and civic organizations, usually featuring members of the Colts organization, promoting or discussing the games. The use of the song increased with the success of the team and the attendance at the games. The song was used in connection with a musical cigarette lighter, the provenance of which was not proved, and on a record of the songs of all the Clubs in the National Football League, issued by RCA Victor, which has not yet resulted in any payment to the Colts.

After Klasmer's death in 1949, his son had visited the Colts' office and inquired about any rights his father may have had, but he took no action of any sort until 1957, when the Klasmers asked the Colts for some compensation for the use of the song.

Lombardi had been approached by a radio station in 1953 for permission to use the song, which he granted, but he wrote no letters, made no calls and took no action of any sort until this suit was filed in 1960.

Lombardi testified that he had no objection and still has no objection to the Colts using the song to promote selling tickets and the like; that he does not care what the Colts do with it; that he does not mind the song being picked up by radio at the games; but that he does not want others to use it.[7]

## The Statutory Law

The present statute is the Act of July 30, 1947, ch. 391, § 1, 61 Stat. 652, as amended, codified as Title 17, United States Code. See particularly 17 U.S.C.A. §§ 10, 11, 12, 13, 14. The former law was not materially different on the points involved in this case.

## Discussion

(1) Defendants concede that Klasmer and Lombardi were the owners of the copyright at the time they deposited with the Copyright Office the final version of the unpublished song, July 23, 1947. Defendants contend, however, that the subsequent acts or failures to act on the part of Klasmer and Lombardi during and after the year 1947 amounted to an abandonment (dedication to the public) or forfeiture of the copyright.

■■ Before and after the Act of 1947 the law has required that notice of copyright be affixed to each copy of the work published or offered for sale in the United States by authority of the copyright proprietor. 17 U.S.C.A. § 10; DeJonge & Co. v. Brueker & Kessler Co., 235 U.S. 33, 35 S.Ct. 6, 59 L.Ed. 113. "The provisions of the statute, as to notice, must be complied with in making and selling a copyrighted article, or otherwise there is a dedication to the public and the copyright protection is lost." Fleischer Studios v. Ralph A. Freundlich, Inc., 2 Cir., 73 F.2d 276, 277, cert. den. 294 U.S. 717, 55 S.Ct. 516, 79 L.Ed. 1250. Even "[p]artial publication of a copyrighted work without the required notice has been repeatedly held to amount to a dedication, making the matter published the property of the public." Deward & Rich v. Bristol Savings and Loan Corp., 4 Cir., 120 F.2d 537, 540. In National Comics Publications v. Fawcett Publications, 2 Cir., 191 F.2d 594, at 598, Judge Learned Hand noted that strictly speaking the terms "dedication" and "abandonment" should be applied to instances of intentional surrender, whereas an author whose work is "forfeited" need

7. Lombardi testified: "Any orchestra in any city, that has a team or any great thing like that, I would imagine would play it. I know I play songs at the Latin Quarter when we find out a certain team is coming in. We play their theme song—Notre Dame or the Navy—when they come into the Latin Quarter as guests, I play the Navy Song. I don't see anything wrong in that, and I wish they had played it. I would like to hear it myself. I play everybody else's number."

have no such purpose, and ordinarily does not; the forfeiture is imposed upon him because of his failure to comply with prescribed formalities.

■ Shortly after July 23, 1947, Klasmer and Lombardi permitted the first Colts corporation to publish for sale sheet music bearing the notice "Copyright 1947, by The Baltimore Colts, Jo Lombardi and Benjamin Klasmer", despite the fact that no assignment of any interest in the copyright had been made to the Colts. Plaintiffs argue that this form of notice should be considered sufficient since it put the public on notice that the work was copyrighted. However, in Mifflin v. R. H. White & Co., 190 U.S. 260, 264, 23 S.Ct. 769, 771, 47 L.Ed. 1040, the Supreme Court said: "It is incorrect to say that any form of notice is good which calls attention to the person of whom inquiry can be made and information obtained, since, the right being purely statutory, the public may justly demand that the person claiming a monopoly of publication shall pursue, in substance, at least, the statutory method of securing it. Thompson v. Hubbard, 131 U.S. 123 [9 S.Ct. 710, 33 L.Ed. 76]. In determining whether a notice of copyright is misleading, we are not bound to look beyond the face of the notice, and inquire whether under the facts of the particular case, it is reasonable to suppose an intelligent person could actually have been misled." In Dejonge & Co. v. Breuker & Kessler Co. supra, Advertisers Exchange v. Anderson, 8 Cir., 144 F.2d 907, Booth v. Haggard, 8 Cir., 184 F.2d 470, Wildman v. New York Times Co., S.D.N.Y., 42 F.Supp. 412, and Group Publishers v. Winchell, S.D.N.Y., 86 F. Supp. 573, various defects in notices were held to work a dedication or a forfeiture.

Also in 1947 Klasmer and Lombardi supplied to the Colts transcriptions of the music for various band instruments, none of which bore any copyright notice, for reproduction and general distribution to bands in Baltimore and elsewhere, without any limitation on their use. The original (1947) reproductions of those transcriptions bore no copyright notice whatever.[8] Under the authorities, such public distribution without any limitation as to use, made with the knowledge and express or implied approval of the copyright owners, amounted to a general publication of the work, and resulted in a dedication or forfeiture. White v. Kimmell, 9 Cir., 193 F.2d 74, cert. den. 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357; Continental Casualty Co. v. Beardsley, 2 Cir., 253 F.2d 702, cert. den. 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58; Patterson v. Century Productions, 2 Cir., 93 F.2d 489, cert. den. 303 U.S. 655, 58 S.Ct. 759, 82 L.Ed. 1114; Hirshon v. United Artists Corporation, 100 U.S. App.D.C. 217, 243 F.2d 640; Mills Music v. Cromwell Music, S.D.N.Y., 126 F. Supp. 54, 64, 65; McCarthy & Fisher, Inc. v. White et al., S.D.N.Y., 259 F. 364.

Moreover, from the 1947 season on, the words of the song usually appeared in the programs sold at the games, without any copyright notice. Klasmer and Lombardi furnished their photographs for reproduction in some of the programs. The evidence also shows that Klasmer and Lombardi knew that the song was being played by bands and orchestras from memory or from unauthorized transcriptions at all sorts of functions in Baltimore from 1947 on, and that they made no objections. After the sheet music had been checked by Lombardi and published by the Colts in 1947, no one filed two copies with the Copyright Office as required by 17 U.S. C.A. § 13. Whether or not that failure was cured by plaintiffs filing photostatic copies of part of the publication in 1960, including the name of the Baltimore Colts among the applicants and copyright owners, the failure of Klasmer and Lombardi to take the necessary action to protect the rights which plaintiffs now seek to assert shows that in 1947 they were not interested in protecting any rights they may have had beyond sharing in

---

**3.** Those made in the middle 1950's bore a notice "Copyright 1947, The Baltimore Colts.

the proceeds of the sale of sheet music and of any records which might be put out by the Colts.

It appears, therefore, that the copyright was forfeited and became the property of the public in 1947 by reason of the acts and failures to act on the part of the copyright owners.

 (2) In 1948 Klasmer and Lombardi, evidently believing they still had some rights, transferred to the second Colts corporation any and all such rights in exchange for 500 shares of stock. The assignment was in writing, and though informal and unrecorded, as between the parties it was sufficient to pass to the assignee all rights of the assignors in the copyright as well as in the song. Rossiter v. Vogel, 2 Cir., 134 F.2d 908. No innocent purchasers from the assignors are involved in this case.

If, therefore, the copyright had not been forfeited in 1947, so that all rights in the song became public property, the song and the copyright would now be owned by the surviving directors of the second Colts corporation, in trust for its creditors and stockholders, unless indeed they in their turn deliberately dedicated the song to the public, abandoned the copyright to the third Colts corporation or forfeited their rights by distributing the music without any copyright notice, by permitting the third corporation to use and publish the sheet music and the band transcriptions with an incorrect copyright notice, and by permitting the general use of the song without protest.

 (3) Plaintiffs are clearly barred by limitations and laches from obtaining part of the relief sought in this case. It is a close question whether the facts show such an equitable estoppel as would prevent plaintiffs from maintaining any action at all. Edwin L. Wiegand Co. v. Harold E. Trent Co., 3 Cir., 122 F.2d 920, cert. den. 316 U.S. 667, 62 S.Ct. 1033, 86 L.Ed. 1743; Hampton v. Paramount Pictures Corporation, 9 Cir., 279 F.2d 100; H. M. Chandler Co. v. Penn Paper Products, S.D.N.Y., 88 F.Supp. 753; Hayden v. Chalfant Press, Inc.,

S.D.Cal., 177 F.Supp. 303, aff'd 9 Cir., 281 F.2d 543. However, in view of the decision on the issues of dedication, forfeiture and assignment, it is not necessary to decide the issue of estoppel in this case.

### Judgment

Let judgment be entered in favor of the defendants, with costs.